## COLUMBIA FEDERAL SAVINGS BANK *v.* INTERNATIONAL SITE CONSULTANTS, INC., ET AL. (14346)

Landau, Spear and Hennessy, Js.

Argued September 28, 1995—decision released January 9, 1996

*Joseph A. Kriz,* for the appellant (defendant Newbrook Associates, Inc.).

*Roy H. Scharf,* for the appellee (substitute plaintiff).

SPEAR, J. The defendant Newbrook Associates, Inc. (Newbrook), appeals from the judgment of foreclosure rendered after the trial court granted the named plaintiff's motion for summary judgment. On appeal, Newbrook asserts that the trial court improperly granted summary judgment because (1) Newbrook held an equitable lien on the subject premises that was superior to the mortgage being foreclosed, (2) the equitable lien was a charge on property and not an interest in property and thus not subject to the time limitations of General Statutes § 47-33a,[1] (3) Newbrook commenced a timely action on its statutory lien pursuant to General Statutes § 49-92c,[2] and (4) genuine issues of material fact existed. We disagree with Newbrook's assertions and affirm the judgment of the trial court.

---

[1] General Statutes § 47-33a (a) provides: "No interest in real property existing under an executory agreement for the sale of real property or for the sale of an interest in real property or under an option to purchase real property shall survive longer than one year after the date provided in the agreement for the performance of it or, if the date is not so provided, longer than eighteen months after the date on which the agreement was executed, unless the interest is extended as provided herein or unless action is commenced within the period to enforce the agreement and notice of lis pendens is filed as directed by section 52-325."

[2] General Statutes § 49-92c provides in pertinent part: "No purchaser's lien shall continue in force for a longer period than two years after such lien has been perfected, unless the party claiming such lien, within said period, commences an action to foreclose the same and proceeds therewith to final judgment. . . ."

The relevant facts are as follows. On December 16, 1986, Newbrook entered into a real estate contract to purchase a parcel of real estate from the named defendant, International Site Consultants, Inc. (International). The contract provided for a deposit of $120,000. On February 26, 1987, International and Newbrook executed an addendum to the contract that provided for Newbrook to purchase a second parcel and to make an additional deposit of $45,000.[3] The contract and addendum were recorded on March 12, 1987. The contract clause at issue is termed "Buyer's Lien" and provides that "[a]ll sums paid on account of this Agreement are hereby made liens thereon, but such liens shall not continue after default by the Buyer under the terms of this Agreement."

In addition, paragraph eleven of the contract makes Newbrook's obligation to purchase the parcels contingent on International's obtaining the necessary approvals for the development of a thirteen lot subdivision. The contract further provided that should International fail to obtain such approvals by December 1, 1987, Newbrook could elect to accept title, rescind the contract or provide International with additional time, not to exceed three years, to seek the necessary approvals.

The first parcel of land was subsequently mortgaged by International to the named plaintiff, Columbia Federal Savings Bank (bank), to secure a $250,000 note. The mortgage was dated February 27, 1987, and recorded on March 2, 1987. As further collateral for the note, International assigned to the bank the December 16, 1986 contract entered into by International and Newbrook. Although the contract was not recorded until March 12, 1987, the bank conceded that it had actual

---

[3] Although the trial court, in its memorandum of decision, recited that Newbrook had paid deposits totaling only $87,500, both parties agree, in their briefs, that Newbrook had paid a total of $110,000.

notice of the contract and addendum at the time the bank and International executed the February 27, 1987 mortgage.

The second parcel was then mortgaged by International to the bank to secure a $130,000 note. This mortgage, dated July 21, 1987, and recorded on July 22, 1987, also covered the first parcel of land as a second mortgage.

The record reflects that International did not obtain the necessary approvals by December 1, 1987. Newbrook terminated the real estate contract on December 5, 1989, and demanded the return of the deposits it had paid. After International refused to return the deposits, Newbrook brought suit against International seeking rescission of the contract and money damages. The bank brought an action to foreclose the mortgages because International had defaulted on its payments. Newbrook was made a party to that action because of its claim that it possessed both a common law equitable lien and a purchaser's lien pursuant to the provision in the contract.

The bank filed a motion for summary judgment as against Newbrook only. The trial court, in granting the bank's motion, concluded that Newbrook possessed only a purchaser's lien, not an equitable lien, and that such lien had expired prior to the commencement of the action pursuant to General Statutes §§ 49-92c[4] and 47-33a.[5] Thereafter, the trial court rendered a judgment of strict foreclosure in favor of General Financial Services, Inc., which had been substituted as plaintiff after the mortgage was transferred to it. This appeal followed.

---

[4] See footnote 2.

[5] See footnote 1.

I

Newbrook first claims that it held an equitable lien that was not subject to the statutory two year time limitation provided in § 49-92c.[6] We disagree and conclude that any equitable lien held by Newbrook was subject to the two year time limitation and, thus, had expired prior to the commencement of the action.

Both parties agree that Newbrook once held a purchaser's lien in the amount of the deposit it had paid pursuant to paragraph ten of the contract. This paragraph of the contract, however, merely recites a statutory right already conferred upon purchasers. General Statutes § 49-92a provides in pertinent part: "A purchaser's lien is created for the amount of the deposit paid pursuant to and stated in the contract for the conveyance of land by the recording of that contract . . . ."

The primary issue on appeal centers around the intent of this legislation and what effect the statute has on the common law equitable lien. The common law equitable lien is "a right, not existing at law, to have specific property applied in whole or in part to payment of a particular debt or class of debts." Black's Law Dictionary (6th Ed. 1990). As such, it "constitutes a charge or encumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action . . . ." 3 J. Pomeroy, A Treatise on Equity Jurisprudence (4th Ed. 1918) § 1233, p. 2958.

Newbrook asserts that the enactment of § 49-92a does not abrogate or impact its common law equitable lien, and that its equitable lien retained priority over the bank's mortgage. The trial court concluded that Newbrook's claimed lien expired by the passage of the statutory two year time limitation of § 49-92c. The trial court reached this conclusion after noting that while our

---

[6] See footnote 2.

courts recognize the equitable lien doctrine, "Newbrook has cited no legal authority for the position that the equitable lien can exist independent of and contrary to the statutory provisions." Newbrook claims that the equitable lien does exist independent of the statutory lien and that the legislature did not intend to affect the equitable lien through its passage of § 49-92a.

We are guided by our well established rules of statutory construction in ascertaining the statute's intent and effect. It is well settled that "[i]n construing a statute, common sense must be used . . . ." *Norwich Land Co.* v. *Public Utilities Commission*, 170 Conn. 1, 4, 363 A.2d 1386 (1975). Further, we must construe a statute to avoid results that are irrational and insensible. *Caltabiano* v. *Planning & Zoning Commission*, 211 Conn. 662, 667, 560 A.2d 975 (1989); *Maciejewski* v. *West Hartford*, 194 Conn. 139, 152, 480 A.2d 519 (1984).

Common sense dictates that the legislature intended to subject the common law equitable lien to the statutory lien provisions. One obvious purpose of § 49-92c is to ensure that a lienholder could not hold a lien over the subject property indefinitely. For this reason, the legislature enacted the statute, which provides for the termination of all purchaser's liens that have continued in force for two years absent any action to foreclose the lien within that two year period. Irrational and insensible results would follow were we to conclude that an equitable lien can exist independent of and contrary to the time limitations posed by § 49-92c. Such a conclusion would allow Newbrook to circumvent the time limitations of § 49-92c, and thereby nullify the effect of the statute and thwart its purpose. We do not interpret a statute in such a way that thwarts its purpose. See *Kron* v. *Thelen*, 178 Conn. 189, 192, 423 A.2d 857 (1979).

Our Supreme Court has held that one cannot, by bringing a common law action of indebitatus assumpsit,

circumvent the statutory time limitations of General Statutes § 12-117a (appeal from property tax valuation) and General Statutes § 12-119 (claim of wrongful tax assessment). *Norwich* v. *Lebanon*, 200 Conn. 697, 708–13, 513 A.2d 77 (1986). The Supreme Court reasoned that one could not resort to the equitable writ of assumpsit because "where a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." Id., 708. "Although resting on the doctrine of exhaustion of remedies, our decision in *Norwich* recognized that the legislative purpose behind the limitation periods for challenging tax assessments would be thwarted if an action for refund of taxes paid upon a disputed assessment could be brought far beyond the time limits for contesting an assessment established by these statutes." (Internal quotation marks omitted.) *Wilson* v. *Kelley*, 224 Conn. 110, 122–23, 617 A.2d 433 (1992).

Similarly, were we to accept Newbrook's theory, then once a contract for the sale of land is recorded, the buyer's equitable lien would exist for an indeterminate period of time, casting a shadow over the title to the subject property. This is precisely the problem that the legislature intended to cure by enacting § 49-92c. We, therefore, conclude that § 49-92a circumscribes the common law equitable lien by subjecting it to the time limitations of § 49-92c.

In its brief, Newbrook also raises the issue of whether the trial court improperly failed to recognize that its equitable lien was a charge on property and not an interest in property, and thus not subject to the time limitations of § 47-33a.[7] Because we find that New-

---

[7] See footnote 1.

brook's lien rights are barred pursuant to § 49-92c, we need not address this issue.

II

Newbrook next claims that its statutory lien is not barred because its action to foreclose was timely. We disagree.

Pursuant to § 49-92c, "[n]o purchaser's lien shall continue in force for a longer period than two years after such lien has been perfected, unless the party claiming such lien, within said period, commences an action to foreclose the same and proceeds therewith to final judgment. . . ." "The legislature is supreme in the area of legislation, and courts must apply statutory enactments according to their plain terms." *Federal Aviation Administration* v. *Administrator, Unemployment Compensation Act*, 196 Conn. 546, 550, 494 A.2d 564 (1985). According to the plain terms of § 49-92c, Newbrook's action was untimely.

The contract was recorded on March 12, 1987. Newbrook terminated the contract on December 5, 1989. In 1990, Newbrook commenced an action against International seeking rescission of the contract and money damages. Newbrook did not institute a foreclosure action. Furthermore, Newbrook cannot rely on the bank's foreclosure action against International because Newbrook, although made a party to that action, did not file a cross claim seeking foreclosure of its lien. The trial court's finding that Newbrook's lien had expired was, therefore, proper.

III

We next address Newbrook's final claim that genuine issues of material fact existed to preclude summary judgment. After a careful inspection of the record, we find that this claim has no merit.

Our standard for reviewing a trial court's granting of summary judgment is well established. "Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact . . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Water & Way Properties* v. *Colt's Mfg. Co.*, 230 Conn. 660, 664, 646 A.2d 143 (1994). Moreover, the party seeking summary judgment "has the burden of showing the nonexistence of any issue of [material] fact." *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980).

Newbrook claims that genuine issues of material fact existed as to the time of performance of the real estate contract, the amount of the deposit and the bank's obligation on the contract. Newbrook filed no counteraffidavits, but claims that the bank's complaint created these questions of fact.

As to the time of performance, paragraph eleven of the real estate contract sufficiently details the parties' respective times for performance. Because Newbrook conceded that it had actual notice of the contract and its provisions, and because there was no other evidence before the trial court at the time it considered the bank's motion, we conclude that no genuine issue of fact existed as to the time of performance.

Newbrook also claims in its brief that a genuine issue of material fact existed as to the amount of the deposit. Newbrook cites nothing in the record, however, to guide us in determining whether such an issue of fact existed.

Finally, no genuine issue of material fact existed as to the bank's obligation on the contract. The bank's obligation emanates from International's assignment of

its contract with Newbrook to the bank. The assignment clearly establishes the bank's obligation. No issue of fact thus existed as to the bank's obligation on the contract. We conclude that the trial court acted properly in granting summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.