MICHAEL MAFFUCCI *v.* ROYAL PARK LIMITED
PARTNERSHIP ET AL.
(14586)

Foti, Spear and Hennessy, Js.

Argued June 3—officially released August 13, 1996

*Joel M. Ellis,* for the appellant (plaintiff).

*Barbara J. Sheedy,* for the appellee (named defendant).

*Brian T. Henebry,* with whom were *James K. Robertson* and, on the brief, *Maureen D. Cox,* for the appellee (defendant Northeast Utilities).

*Janet C. Spegele, Cynthia L. Amara* and *Stephen Ostrach* filed a brief for Connecticut Business and Industry Association et al. as amici curiae.

SPEAR, J. In this negligence action, the plaintiff appeals from the judgment of the trial court granting the defendants'[1] motion for summary judgment. On appeal, the plaintiff claims that the trial court improperly concluded that no genuine issue of material fact existed as to (1) whether the defendants had actual or constructive notice as to the presence of trespassers, and (2) whether posted signs adequately warned the public as to the danger that existed on the property. We conclude that genuine issues of material fact did exist and therefore reverse the judgment of the trial court.

The pleadings, accompanying affidavits and deposition testimony presented to the trial court reveal the following relevant facts. On January 15, 1991, the plaintiff was severely injured when he came into contact with an energized circuit in a switchgear[2] located on the premises of the old Royal Typewriter building in Hartford. The plaintiff and Robert Fricke entered the switchgear with the intent to remove copper. The plain-

---

[1] The defendants are Royal Park Limited Partnership (Royal Park) and Northeast Utilities.

[2] The switchgear is a large metal box divided into several cabinets that contain electrical switching equipment.

tiff had removed six copper bars prior to being injured. On the date of the injury, Royal Park owned the building, and Northeast Utilities owned and operated the switchgear. Prior to the date of the injury, the electrical power from the switchgear to the building had been disconnected, but electrical power still flowed to the switchgear.

The building was bordered by a fence approximately eight feet high that bore "No Trespassing" signs. The fence, however, had an open gate through which the plaintiff and Fricke gained access to the building. The switchgear, located on the west side of the property, contained signs on its east and south sides that read "Danger High Voltage." The plaintiff, who was injured on the north side of the switchgear, claims that he never saw the posted warnings. Moreover, a padlock used to secure the switchgear had been cut and left on the ground.

The deposition testimony of the plaintiff and Fricke revealed the following. From a car on Francis Court, the plaintiff and Fricke had observed the activities at the building for a period of two weeks prior to the date of their entry to satisfy themselves that they could gain access and take the copper. During this period, the plaintiff and Fricke observed people on the property with carts and trucks looking for copper. Fricke testified that they believed the building was abandoned because there were police in the vicinity of where people were taking copper and the police did not interfere with their activity. Fricke also testified that people leaving the property told them that they were receiving over $1 per pound for the copper and that the property appeared abandoned.

Both men stated in their depositions that they never saw a "No Trespassing" sign on the fence. The plaintiff

also testified that every cabinet on the side of the switchgear where he was injured was open and that inside there were obvious signs that others had been there to remove copper. The plaintiff further claimed that he saw no warning signs alerting him to the danger of electrocution, but that, even had he seen such signs, he still would have entered because he assumed, based on his observations of dangling wires and other signs of abandonment, that the electrical power had been disconnected.

Further deposition testimony revealed the following. Robert Larsen, a claim representative for Connecticut Light and Power Company (CL&P), a subsidiary of Northeast Utilities, testified that he entered the building next to the switchgear on the day of the accident and found that "it looked like there had been people in here on a regular basis . . . . And [the supervisor] mentioned to me or stated to me at the time that they knew that there had been people in. They had been trying to secure the building. And everything that they did to secure it was damaged and people got in with all the precautions that they had taken." Moreover, Randolph Brown, vice president and general partner of Royal Park, testified that employees had reported to him the existence of trespassers.

The plaintiff filed a negligence action in two counts against the defendants.[3] On August 15, 1994, the defend-

[3] In his revised complaint, the plaintiff alleged that Royal Park was negligent in that it (1) allowed people to enter the premises when it knew that the switchgear had electrical power and knew or should have known that people enter the switchgear, (2) failed to give any warning to the plaintiff of the dangerous condition, and (3) failed to cure the dangerous condition when it knew or should have known that such dangerous condition existed.

The plaintiff alleged that Northeast Utilities was negligent in that it (1) allowed people to enter the switchgear when it knew that the switchgear had electrical power and knew or should have known that people enter the switchgear, (2) failed to give any warning to the plaintiff of the dangerous condition, (3) failed to cure the dangerous condition when it knew or should have known that such dangerous condition existed, and (4) failed to use

ants filed a joint motion for summary judgment. The defendants attached affidavits, deposition testimony, and a memorandum of law in support of their motion. In response, the plaintiff filed a memorandum of law in opposition to the defendants' joint motion for summary judgment. After considering the pleadings, depositions, and accompanying affidavits, the trial court granted the defendants' motion.

In granting summary judgment for Royal Park, the trial court found that the only duty Royal Park owed to the plaintiff trespasser was a duty not to injure intentionally. The court based its decision on its finding that "the record is void of evidence that the switchgear had been subject to any prior intrusions by trespassers . . . ." Because the trial court found that Royal Park did not have any notice as to the existence of trespassers, the court rejected the plaintiff's claim that Royal Park had a duty to exercise reasonable care to warn trespassers of the dangerous conditions that existed on the property.

In granting summary judgment for Northeast Utilities, the trial court found that there was "no evidence that the defendant . . . had prior knowledge or should have known that trespassers were entering the switchgear prior to the incident." The trial court, therefore, rejected the plaintiff's claim that Northeast Utilities owed a duty of greater care than that applicable to undiscovered trespassers. The court, in the alternative, found that even if Northeast Utilities had notice of trespassers entering the switchgear, the evidence established that there were sufficiently clear warnings indicating the dangers and risk involved. This appeal followed.

every effort properly to warn and protect the public from danger and failed to exercise all possible care to reduce the hazard to which employees, customers and others may be subject by reason of its equipment and facilities pursuant to § 16-11-102 (a) of the Regulations of Connecticut State Agencies.

The plaintiff claims that the trial court improperly granted the defendants' motion for summary judgment because genuine issues of material fact exist. We agree.

" 'The standard for appellate review of a trial court's decision to grant a summary judgment motion is well established. Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such issue. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts.' " (Citations omitted.) *Citicorp Mortgage, Inc.* v. *Porto*, 41 Conn. App. 598, 601, 677 A.2d 10 (1996); see also *Home Insurance Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1026 (1995); *Columbia Federal Savings Bank* v. *International Site Consultants*, 40 Conn. App. 64, 72, 669 A.2d 594, cert. denied, 236 Conn. 910, 671 A.2d 824 (1996).

It is also well established that "[s]ummary judgment procedure is especially ill-adapted to negligence cases, where, as here, the ultimate issue in contention involves a mixed question of fact and law, and requires the trier of fact to determine whether the standard of care was met in a specific situation." (Internal quotation marks omitted.) *Michaud* v. *Gurney*, 168 Conn. 431, 434, 362 A.2d 857 (1975); see also *Fogarty* v. *Rashaw*, 193 Conn. 442, 446, 476 A.2d 582 (1984); *DiUlio* v. *Goulet*, 2 Conn. App. 701, 703, 483 A.2d 1099 (1984). A determination

of negligence is necessarily one of fact. *Michaud* v. *Gurney*, supra, 434; *Cappiello* v. *Haselman*, 154 Conn. 490, 495, 227 A.2d 79 (1967); *Balboni* v. *Stonick*, 2 Conn. App. 523, 527, 481 A.2d 82 (1984). As such, "[i]ssues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner." *Spencer* v. *Good Earth Restaurant Corp.*, 164 Conn. 194, 199, 319 A.2d 403 (1972); see also *Amendola* v. *Geremia*, 21 Conn. App. 35, 37, 571 A.2d 131, cert. denied, 215 Conn. 803, 574 A.2d 217 (1990).

I

The plaintiff first asserts that a genuine issue of material fact exists as to whether the defendants had actual or constructive notice as to the presence of trespassers on the property. The issue of actual or constructive notice directly relates to the duty of care owed by a landowner to trespassers.

Ordinarily, " 'the possessor of real estate owes no duty to trespassers . . . to keep the property in a reasonably safe condition for their use . . . .' " *Morin* v. *Bell Court Condominium Assn., Inc.*, 223 Conn. 323, 328, 612 A.2d 1197 (1992), quoting D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed.) § 47, p. 110. The only duty a landowner owes to a trespasser whose presence is undiscovered is a duty not to injure intentionally. *Morin* v. *Bell Court Condominium Assn., Inc.*, supra, 328; see also W. Prosser & W. Keeton, Torts (5th Ed.) § 60, p. 416. Our courts have, however, recognized a duty of greater care that applies when a landowner knows, or should know, that trespassers regularly come onto his or her property. In *Lucier* v. *Meriden-Wallingford Sand & Stone Co.*, 153 Conn. 422, 429, 216 A.2d 818 (1966), our Supreme Court cited with approval the doctrine established in § 335 of the 3 Restatement (Second), Torts. Section 335 provides: "A possessor of land who knows, or from facts within his

knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if (a) the condition (i) is one which the possessor has created or maintains and (ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespasser and (iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and (b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved."[4]

The trial court found, as a matter of law, that neither defendant had actual or constructive notice of prior

[4] Our regulations also establish a standard of care applicable to utilities. Section 16-11-102 (a) of the Regulations of Connecticut State Agencies provides that "[e]very utility shall use every effort to properly warn and protect the public from danger and shall exercise all possible care to reduce the hazard to which employees, customers and others may be subjected by reason of its equipment and facilities." In its memorandum of decision filed on December 24, 1994, the trial court failed to discuss this regulation and, instead, based its decision on the duty of care pursuant to § 335.

On December 30, 1994, the plaintiff filed a motion to open judgment and for reargument, claiming that the court failed to rule on the applicability of the regulation. The plaintiff, relying on *Citerella* v. *United Illuminating Co.*, 158 Conn. 600, 607, 266 A.2d 382 (1969), argued that the regulation creates a standard of care higher than § 335, and that a violation of the regulation by a utility constitutes negligence per se. In response to the plaintiff's motion, the trial court issued another memorandum of decision, filed on March 2, 1995, and stated without further explanation: "This court disagrees and finds that regulation § 16-11-102 does not bar the analysis applied in this court's original decision." In articulating its decision, the trial court found: "For all questions pertaining to regulation § 16-11-102, this court has found that it does not establish a standard of care higher than the negligence standard nor § 335 of the Restatement of Torts." We need not address the issue of whether § 16-11-102 creates a higher standard of care than does § 335. There exists no dispute that § 335 requires landowners to warn those trespassers they know, or should know, constantly intrude on the land of any dangerous condition that exists on the land. Our decision, thus, focuses squarely on whether the pleadings and other evidence before the trial court create an issue of material fact as to whether the defendants had such actual or constructive notice of prior trespassers so as to preclude summary judgment on this issue.

trespassers, and, thus, each owed only a duty not to injure intentionally.[5] In viewing the evidence in the light most favorable to the plaintiff as the nonmoving party; see *Citicorp Mortgage, Inc.* v. *Porto*, supra, 41 Conn. App. 601; we conclude that the pleadings, deposition testimony and affidavits create a genuine issue of material fact as to whether the defendants had actual or constructive notice.

First, the evidence revealed that the padlock used to secure the switchgear had been cut and left on the ground, indicating the prior presence of trespassers. Second, there was ample deposition testimony that raised an issue as to the prior presence of trespassers. Both the plaintiff and Fricke testified that they noticed people two weeks prior to the date of the accident near the switchgear with carts and trucks looking for copper. The plaintiff also testified that every cabinet on the side of the switchgear where he was injured was open and

[5] The trial court's conclusion that Royal Park owed only a duty not to injure the plaintiff intentionally was premised not only on its finding that Royal Park did not have notice of prior trespassers, but also on its finding that Royal Park "neither created nor maintained," within the meaning of § 335 (a) (1) (i) of the Restatement (Second) of Torts, the switchgear that caused the injury to the plaintiff. This finding that Royal Park did not maintain the switchgear constitutes a finding of fact rather than a determination that *no* issue of material fact exists.

Although Royal Park did not own or operate the switchgear, the switchgear was located on its property. As we have previously stated, landowners have a duty to warn those who regularly trespass on their property of those dangerous conditions that exist on the property. 3 Restatement (Second), Torts § 335. We are also guided by our Supreme Court's decision in *Starr* v. *Commissioner of Environmental Protection*, 226 Conn. 358, 360, 627 A.2d 1296 (1993). There, our Supreme Court interpreted the provision "*maintaining . . . a condition*" found in General Statutes § 22a-432. The court concluded that where a landowner becomes aware of a dangerous condition on his or her land, the landowner is charged with "maintaining" that condition despite not having created the condition due to the landowner's dominion over the property. Whether Royal Park, as landowner, "maintains" the switchgear, and, thereby owes a duty of care consistent with § 335 to those it knows, or should know, regularly trespass on its property is a question of fact.

that inside there were obvious signs that others had been there to remove copper. Larsen, the claims representative for CL&P, testified that on the day of the accident, the building next to the switchgear "looked like there had been people in here on a regular basis . . . . *And [the supervisor] mentioned to me or stated to me at the time that they knew that there had been people in.*" (Emphasis added.) Third, Brown, vice president and general partner of Royal Park, testified that employees had reported to him the existence of trespassers. On the basis of the pleadings, affidavits and deposition testimony, we conclude that there exist issues of material fact as to whether the defendants had actual or constructive notice as to the presence of trespassers and whether Royal Park "maintained"[6] the switchgear. Summary judgment was, therefore, not appropriate.

## II

The plaintiff next asserts that a genuine issue of material fact exists as to whether there were signs that adequately warned entrants on the property of the dangers that existed. The trial court found that the record established that "the switchgear was clearly and sufficiently marked with 'High Voltage' warnings that would alert all but a singularly intentioned thief" and, therefore, granted summary judgment.

Even where a trial court finds that the evidence strongly favors one party, that court may not arrogate to itself the role of trier of fact and, thus, decide issues of material fact as a matter of law. " 'A party has the same right to submit a weak case [to the jury] as he has to submit a strong one." *Rosick* v. *Equipment Maintenance & Service, Inc.*, 33 Conn. App. 25, 36, 632 A.2d 1134 (1993), quoting *Falker* v. *Samperi*, 190 Conn. 412, 419, 461 A.2d 681 (1983). In viewing the evidence in the light most favorable to the plaintiff, we conclude that

---

[6] See footnote 5.

the issue of whether the posted warnings were adequate should be submitted to a jury as a question of fact. See *Battistoni* v. *Weatherking Products, Inc.*, 41 Conn. App. 555, 564, 676 A.2d 890 (1996); *Sharp* v. *Wyatt, Inc.*, 31 Conn. App. 824, 834, 627 A.2d 1347 (1993), aff'd, 230 Conn. 12, 644 A.2d 871 (1994).

First, the pleadings and accompanying affidavits establish that the "Danger High Voltage" warning signs were located on the south and east sides of the switchgear. Such evidence substantiates the claim of the plaintiff, who entered the switchgear on the north side, that he never saw the signs. Reasonable minds could reach different conclusions as to whether there were a sufficient number of signs around the switchgear.

Reasonable minds could also differ as to whether the posted signs adequately warned those on the property of the existing danger. Deposition testimony revealed that the switchgear appeared to have no electricity flowing to it. There was testimony that the electrical power flowing from the switchgear to the building had been disconnected. Furthermore, deposition testimony disclosed that electrical wires had been stripped, copper bars removed, and trespassers had entered the switchgear. A jury should determine whether the posted warnings should have been more detailed in light of the appearances that indicated that there was no electricity flowing to the switchgear. Accordingly, the trial court improperly decided, as a matter of law, the issue as to the adequacy of the warnings.

The judgment is reversed and the case is remanded with direction to deny the motion for summary judgment.

In this opinion the other judges concurred.