# MICHAEL MAFFUCCI v. ROYAL PARK LIMITED PARTNERSHIP ET AL.
## (SC 15577)

Callahan, C. J., and Norcott, Katz, Palmer and McDonald, Js.

Argued October 29, 1997—officially released January 27, 1998

*Lisa M. Faris* and *James K. Robertson, Jr.*, with whom were *Brian T. Henebry* and, on the brief, *Brian W. Smith, Barbara J. Sheedy* and *Maureen D. Cox*, for the appellants (defendants).

*Joel M. Ellis*, for the appellee (plaintiff).

*Opinion*

CALLAHAN, C. J. This appeal arises out of an action for personal injuries sustained by the plaintiff, Michael Maffucci, when he entered an electrical switchgear cabinet, in a bank of such cabinets, located on property owned by the named defendant, Royal Park Limited Partnership (Royal Park), with the intent to steal copper. The switchgear cabinet was owned and maintained by Connecticut Light and Power Company (CL&P), an operating subsidiary of the defendant Northeast Utilities. The plaintiff was severely injured when he came into contact with a live electrical circuit inside the switchgear cabinet. The sole issue on appeal is whether the Appellate Court was correct in concluding that the trial court should not have granted the defendants' joint motion for summary judgment.[1] *Maffucci* v. *Royal Park*

[1] We granted certification to appeal limited to the following three issues: (1) "Did the Appellate Court properly conclude that there was sufficient evidence in the record to create a material issue of fact as to whether the defendants had actual or constructive notice of prior trespassers?" (2) "Is the rule of § 335 of the Restatement (Second) of Torts regarding the duty of care owed a trespasser applicable to an electric utility whose operations are governed by § 16-11-102 (a) of the Regulations of Connecticut State

*Ltd. Partnership*, 42 Conn. App. 563, 572, 680 A.2d 333 (1996). Although this issue has many subparts, it is the defendants' claim that because there are no facts in the record indicating that they had any knowledge of persistent intrusions by trespassers upon or into the switchgear cabinets, the only duty owed to the plaintiff was to refrain from injuring him " 'intentionally, or by willful, wanton or reckless conduct.' " *Morin* v. *Bell Court Condominium Assn., Inc.*, 223 Conn. 323, 328, 612 A.2d 1197 (1992). The defendants argue that summary judgment was appropriate because the plaintiff has alleged no violation of that limited duty in his complaint. We agree.

"The standard of review for summary judgment is well established. 'Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in

Agencies?" and (3) "Did the Appellate Court properly conclude that there was sufficient evidence on the record to create a material issue of fact as to whether or not Royal Park Limited Partnership created or maintained the switchgear that caused the injury to the plaintiff?" *Maffucci* v. *Royal Park Ltd. Partnership*, 240 Conn. 915, 692 A.2d 813 (1997). Because the first issue is dispositive of this appeal, we do not fully address the remaining issues.

support of a motion for summary judgment].' . . . *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995); see also Practice Book § 384." *Bruttomesso* v. *Northeastern Connecticut Sexual Assault Crisis Services, Inc.*, 242 Conn. 1, 5–6, 698 A.2d 795 (1997).

The facts established by the pleadings, affidavits and other proof, viewed in the light most favorable to the plaintiff, are as follows. On the date that the plaintiff sustained his injuries, Royal Park owned the Old Royal Typewriter building (building) in Hartford and the 9.7 acre parcel of property upon which the building was located. On that same property, adjacent to the building, was a bank of large electrical switchgear cabinets owned and maintained by CL&P, an operating subsidiary of Northeast Utilities. The switchgear was contained in several metal cabinets and located outside of the building. The entire property was protected by an eight foot fence topped with barbed wire and marked with "No Trespassing" signs in both English and Spanish. Two signs warning, "Danger, High Voltage," were located on the switchgear cabinets themselves.

In the weeks prior to the plaintiff's injuries, he and a cohort, Robert Fricke, had heard that the building had been abandoned. The plaintiff and Fricke had driven to the area of the building for surveillance purposes and had watched individuals going into the building and exiting with copper wire. The fence surrounding the property contained an open gate through which people wishing to enter the property could gain access. According to the plaintiff, some of those people removing copper wire were driving pick-up trucks, while others used grocery carts to remove rolls of wire. The plaintiff and Fricke spoke to some of the persons leaving the property who indicated to the plaintiff and Fricke that they were selling the copper wire for $1 per pound and that the building was abandoned.

On January 15, 1991, the plaintiff and Fricke entered Royal Park's property with the admitted intention of removing copper in order to sell it. As they arrived, they saw an individual throwing rolls of copper wire out of one of the building's windows and placing them into shopping carts. After they entered the open gate, the plaintiff and Fricke observed a man with a copper bar leaving the area in which the switchgear cabinets were located.

Upon entering the area of the switchgear cabinets, the plaintiff noted that the padlocks had been cut from the cabinets containing the switchgear and that the cabinets were open. It also appeared that some copper already had been removed from the cabinets. The plaintiff succeeded in removing six bars over the course of one hour when he came into contact with an energized circuit in the switchgear and was injured. The plaintiff denied having seen the posted warnings, but admitted in his deposition that he would have ignored the warnings if he had seen them.[2]

As a result of his injuries, the plaintiff filed a negligence action in two counts against the defendants.[3]

[2] The plaintiff assumed that because the building appeared to be abandoned the electrical switchgear was not energized. The electrical equipment remained energized, however, to serve other CL&P customers in the vicinity.

[3] In the first count of his revised complaint, the plaintiff alleged that Royal Park was negligent in that it (1) allowed the existence of electrical power on the premises "when it knew or should have known [that] people entered and used said premises"; (2) "failed to give any warning to the plaintiff of the dangerous condition"; and (3) "failed to take action to cure said dangerous condition" when it knew or should have known that such dangerous condition existed.

In the second count, the plaintiff alleged that Northeast Utilities was negligent in that it (1) allowed the existence of electrical power on the premises "when it knew or should have known [that] people entered and used said premises"; (2) "failed to give any warning to the plaintiff of the dangerous condition"; (3) "failed to take action to cure said dangerous condition" when it knew or should have known that such dangerous condition existed; and (4) "failed to use every effort to properly warn and protect the public from danger and failed to exercise all possible care to reduce the hazard to which employees, customers and others may be subject by

The defendants subsequently filed a joint motion for summary judgment with attached affidavits, deposition testimony and a memorandum of law in support of their motion. In their supporting memorandum of law, the defendants argued, inter alia, that, despite viewing the facts in the light most favorable to the plaintiff, there were no facts in the record indicating that the defendants knew, or should have known, of any trespassers into or upon the switchgear cabinets prior to the time of the plaintiff's injury. Consequently, the defendants argued, they could not be held liable for the negligent acts the plaintiff alleged in his complaint and, therefore, they were entitled to summary judgment.[4]

In response, the plaintiff filed a memorandum of law in which he asserted that there existed "a genuine issue of fact as to whether the defendants had actual and/or constructive knowledge that persons were constantly intruding on the premises of the Old Royal Typewriter building curtilage, inclusive of the subject switchgear." The trial court granted the defendants' motion, concluding that "the record is void of evidence indicating that the switchgear had been subject to any prior intrusions by trespassers . . . . In advocating [his] position, the plaintiff's focus is on the property as a whole which includes standing buildings. This court rejects such a wide focus and makes its decision by analyzing the

reason of its equipment and facilities in violation of § 16-11 of the Connecticut General Statutes."

[4] The defendants also argued in the alternative that, even if a material issue of fact existed as to their knowledge of prior trespassers, they were still entitled to summary judgment because the only duty owed to a known trespasser under § 335 (b) of the Restatement (Second) of Torts is a duty to warn and there was no dispute that they had met that limited duty. The trial court agreed with the defendants that summary judgment would also be appropriate on the alternative grounds, but the Appellate Court disagreed. *Maffucci* v. *Royal Park Ltd. Partnership*, supra, 42 Conn. App. 572–73. That issue, however, is beyond the scope of the certified issues. Moreover, it is unnecessary to reach that issue in resolving this action.

facts surrounding the switchgear solely which was the source of the plaintiff's injuries."

The Appellate Court reversed the judgment of the trial court, concluding that "there exist issues of material fact as to whether the defendants had actual or constructive notice as to the presence of trespassers . . . ." *Maffucci* v. *Royal Park Ltd. Partnership*, supra, 42 Conn. App. 572. The Appellate Court based this conclusion on three elements of the deposition testimony presented: (1) the plaintiff and Fricke had witnessed people openly removing copper from the Royal Park property for the two weeks preceding the plaintiff's injuries; (2) the switchgear cabinets were open when the plaintiff and Fricke arrived at the switchgear cabinets, the padlocks already were cut, and there were obvious signs that copper already had been removed; and (3) testimony indicated that Royal Park was aware of prior trespasses to the building. Id., 571. We reverse the judgment of the Appellate Court.

I

The first issue presented is whether there is sufficient evidence to create a genuine issue of material fact regarding the defendants' actual or constructive notice of the presence of trespassers. The resolution of this issue initially requires an analysis of the duty owed by a possessor of land to a trespasser. It is well established that a possessor of land is under no duty to keep his or her land reasonably safe for an adult trespasser,[5] but has the duty only to refrain from causing injury to a trespasser "intentionally, or by willful, wanton or reckless conduct."[6] (Internal quotation marks omitted.)

---

[5] The plaintiff in this case was an adult at the time of injury. Consequently, the substantial precedent in this state governing a landowner's duty to a child trespasser is inapposite to this case.

[6] The plaintiff made no allegation of intentional harm or wilful, wanton or reckless conduct on the part of the defendant. See footnote 3 of this opinion. It is unnecessary, therefore, to address this potential duty owed by the defendants.

*Morin* v. *Bell Court Condominium Assn., Inc.,* supra, 223 Conn. 328.[7]

There is an equally well established exception to this general rule. "[I]f the owner . . . know[s] that the presence of trespassers is to be expected, then the common obligation of exercising reasonable care gives rise to the correlative duty of taking such precautions against injuring trespassers as a reasonable foresight of harm ought to suggest." *Carlson* v. *Connecticut Co.,* 95 Conn. 724, 730, 112 A. 646 (1921);[8] see *Lucier* v. *Meriden-Wallingford Sand & Stone Co.,* 153 Conn. 422, 429, 216 A.2d 818 (1966); *Thibodeau* v. *Connecticut Co.,* 139 Conn. 9, 14–15, 89 A.2d 223 (1952); *McPheters* v. *Loomis,* 125 Conn. 526, 532, 7 A.2d 437 (1939).

The common-law rule governing the duty owed by a possessor of land to known trespassers for dangerous conditions upon the land is clearly set forth in § 335 of the Restatement (Second) of Torts. Section 335 provides that "[a] possessor of land who *knows, or from facts within his knowledge should know,* that trespassers *constantly intrude* upon a *limited area of the land,* is subject to liability for bodily harm caused to them by an artificial condition on the land, if (a) the condition (i) is one which the possessor has created or maintains, and (ii) is, to his knowledge, likely to cause death or

---

[7] The court in *Morin* was evaluating the liability of a landowner to a licensee. It addressed the issue of liability to a trespasser for comparative purposes. *Morin* v. *Bell Court Condominium Assn., Inc.,* supra, 223 Conn. 333.

[8] We have interpreted *Carlson* as following the rule of § 334 of the Restatement (Second) of Torts governing dangerous activities upon the land as opposed to dangerous conditions. *Morin* v. *Bell Court Condominium Assn., Inc.,* supra, 223 Conn. 333 (reviewing § 334 for comparative purposes). Sections 334 and 335 are identical in all material respects. The court in *Morin* noted the need to find that the possessor of land knew or should have known " 'that trespassers constantly intrude upon a limited area thereof' " as a prerequisite to finding a duty. *Morin* v. *Bell Court Condominium Assn., Inc.,* supra, 333.

serious bodily harm to such trespassers, and (iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and (b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved." (Emphasis added.) 2 Restatement (Second), Torts § 335, p. 188 (1965); accord 62 Am. Jur. 2d, Premises Liability § 207 (1990). We agree with § 335 that liability in negligence for a dangerous condition on land will attach only if the possessor has actual or constructive knowledge that "trespassers constantly intrude[d] upon a limited area of the land." See *Lucier* v. *Meriden-Wallingford Sand & Stone Co.*, supra, 153 Conn. 429; see also *Morin* v. *Bell Court Condominium Assn., Inc.*, supra, 223 Conn. 333.[9] Knowledge of the presence of trespassers can be imputed to a possessor of land only if there were shown to be facts within the knowledge of the possessor that "trespassers constantly intrude[d] upon a limited area of the land." 2 Restatement (Second), supra, § 335; see *Morin* v. *Bell Court Condominium Assn., Inc.*, supra, 333. Although we have not specifically addressed the quoted language of the Restatement (Second) previously,[10] other jurisdictions have done so pursuant to the Restatement (Second) or a parallel rule.

For example, in *Henderson* v. *United States*, 846 F.2d 1233 (9th Cir. 1988), a thief climbed a utility pole to

---

[9] We note that the recognition by this court of § 334 supports our conclusion that the materially identical language employed in § 335 should also be adopted. See footnote 8 of this opinion.

[10] Although we previously have recognized the need to look to only a "limited portion of the premises" in *Lucier* v. *Meriden-Wallingford Sand & Stone Co.*, supra, 153 Conn. 429, we did not define the scope of that phrase. That case involved a private road blocked by a cable. Two motorcyclists traveling on the road were injured when their motorcycle hit the cable. It may be inferred that the court's reliance on evidence of the defendant's knowledge of prior use by trespassers of "that limited portion of the premises" is an acknowledgment that prior knowledge of trespassers on the road at the point of the cable, and not other portions of the property, was necessary to meet the requirements of § 335. Id.

steal copper wire and was electrocuted by an uninsulated wire. The court determined that "[d]espite the presence of picnickers and vandals [in a nearby area], the [defendant] had little reason to foresee that thieves might climb power poles to steal copper wires." Id., 1235.[11] In *Bennett* v. *Public Service Co. of New Hampshire*, 542 F.2d 92, 97 (1st Cir. 1976), the court concluded that in order to establish constructive knowledge, the defendant must have "actual knowledge of people coming within dangerous proximity to the wires—meaning not merely the presence of people in the area on the ground, but people either climbing the pole or otherwise placing themselves in a position near the wires so as to endanger their safety." Evidence that the defendant knew the pole was within fifty feet of a lake with a beach used by the public in an area populated by cottages and used as a recreational area was insufficient to conclude that the defendant "should have anticipated the presence of a trespasser such as [the plaintiff] on its pole in proximity to the live wires at the top." Id., 94. Similarly, in *Foster* v. *Alabama Power Co.*, 395 So. 2d 27, 31 (Ala. 1981), the court concluded that notwithstanding "evidence that the [defendant] might have had reason to know that people were in the area and might be near the tower, there was no evidence from which a factfinder could infer that the [defendant] had any reason to know that people might be climbing the tower." Finally, in *Lindquist* v. *Albertsons, Inc.*, 113 Idaho 830, 831, 748 P.2d 414 (Idaho App. 1987), the court, after adopting § 335, concluded that, although there was substantial evidence of regular trespass to the parking lot

---

[11] The court in *Henderson* relied on an analysis of California law, which contains a multifactor test for creation of a duty. *Henderson* v. *United States*, supra, 846 F.2d 1236. The court declined to create a duty to the plaintiff, concluding that several factors "including foreseeability, prevention of future harm, moral blame, and consequences to the community, weigh heavily against finding a duty. No factor weighs strongly in [favor] of creating a duty." Id.

and a path behind the defendant's store, there was insufficient evidence of "frequent or general entry into the abandoned freight-loading area" where the plaintiff was injured to raise a material issue of fact regarding constructive notice. Constant intrusion to other areas was not sufficient to give constructive notice of intrusion to the limited area of the loading dock. Id. Moreover, notwithstanding evidence indicating that the limited area of the loading dock was intruded upon one prior time, that single prior incident of entry was insufficient to establish *constant* intrusion. Id.

We find this authority to be persuasive. When a trespasser is harmed as a result of his or her entrance into or upon a structure constituting an "artificial condition on the land," the limited area to which the court must look is the structure creating the condition. In the present case, that limited area of the land is the switchgear cabinets themselves. Actual knowledge of trespasses to other areas of the property, including the building or the courtyard in which the switchgear cabinets were located, is insufficient to impute to the defendants knowledge of trespassers into or upon the switchgear cabinets. Knowledge of trespassers to other areas cannot, therefore, be the basis for imposing liability on the defendants for the injury to the plaintiff.

Actual knowledge of trespassers on a limited area of the land is not necessary if the possessor[12] has constructive knowledge of their presence, i.e., if he "know[s]

---

[12] We note that CL&P is not the possessor of land as required by the first phrase of § 335. Section 384 of the Restatement (Second) of Torts provides, however, that "[o]ne who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge." We adopted this rule in *Duggan v. Esposito*, 178 Conn. 156, 159, 422 A.2d 287 (1979). CL&P did construct the switchgear originally for the benefit of the property owner and was still in charge of

that the presence of trespassers is *to be expected.*" (Emphasis added.) *Carlson* v. *Connecticut Co.*, supra, 95 Conn. 730; see *Lucier* v. *Meriden-Wallingford Sand & Stone Co.*, supra, 153 Conn. 429. To prove "constructive knowledge of the plaintiff's presence on the premises, [however] the plaintiff must prove a level of knowledge 'equivalent to actual knowledge.' " *Morin* v. *Bell Court Condominium Assn., Inc.*, supra, 223 Conn. 329.[13] A possessor of land has no duty to anticipate the presence of trespassers.[14] *Marchand* v. *New York, New Haven & Hartford R. Co.*, 146 Conn. 599, 604–605, 153

maintaining the switchgear. Section 335 applies, therefore, with equal force to both defendants. See *Dzenutis* v. *Dzenutis*, 200 Conn. 290, 304, 512 A.2d 130 (1986). Additionally, we have noted on previous occasions that the duty to a trespasser upon personal property is the same as the duty to a trespasser upon land. See *Kakluskas* v. *Somers Motor Lines, Inc.*, 134 Conn. 35, 42–43, 54 A.2d 592 (1947) (comparing standard for liability to trespasser upon automobile with that of trespasser upon land and noting that they are same).

[13] Although the court in *Morin* was addressing the requisite notice of the presence of a licensee, the same rule is properly applicable to determining notice of trespassers, to whom a lesser duty is owed. *Morin* v. *Bell Court Condominium Assn., Inc.*, supra, 223 Conn. 327; see *Marchand* v. *New York, New Haven & Hartford R. Co.*, 146 Conn. 599, 604–605, 153 A.2d 438 (1959).

[14] This limitation is well reasoned and "rests on the fact that the landowner has dominion over the land and a higher right to its use than does the trespasser, and that consequently the trespasser is to be taken to have assumed the risk of conditions upon the property . . . while, on the other hand, *the landowner has the right to assume, until he knows or should know to the contrary, that no one will enter upon his land without right and so in his use of the property is not chargeable with that reasonable anticipation of harm to others which in such a case as this is the basis of liability in negligence.*" (Citations omitted; emphasis added.) *McPheters* v. *Loomis*, supra, 125 Conn. 532; *Deacy* v. *McDonnell*, 131 Conn. 101, 103–104, 38 A.2d 181 (1944) ( " 'trespasser must take the premises as he finds them and assumes the risk of any danger arising out of their condition' "); *Hayes* v. *New Britain Gas Light Co.*, 121 Conn. 356, 357–58, 185 A. 170 (1936) (same). In his dissent to *Hill* v. *Way*, 117 Conn. 359, 369, 168 A. 1 (1933), Chief Justice Maltbie cited *Carlson* for the proposition that because "the presence of a trespasser is not to be expected there is not present that element of foreseeability of danger inherent in the concept of negligence." Without foreseeability, there can be no duty. *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 385, 650 A.2d 153 (1994).

A.2d 438 (1959); see *DeSantis* v. *New England Furniture Co.*, 132 Conn. 134, 136, 42 A.2d 792 (1945); *Deacy* v. *McDonnell*, 131 Conn. 101, 103–104, 38 A.2d 181 (1944). Absent a duty of the defendants to anticipate trespassers, the plaintiff must have presented evidence of some facts within the defendants' knowledge from which they should have known of the presence of trespassers routinely intruding into or upon the switchgear cabinets. The facts in the record are inadequate to establish the existence of either actual or constructive knowledge.

CL&P electricians conducted monthly inspections of the switchgear and, in their affidavits, testified that they were not aware of any trespass to the switchgear cabinets. The plaintiff, in fact, presented no evidence that any employee of CL&P knew of any prior trespasses into or upon the switchgear cabinets. The evidence does indicate that Royal Park may have been aware of some prior trespasses to their building, but the plaintiff presented no evidence that Royal Park was aware that trespassers had entered into or upon the switchgear cabinets. The plaintiff's only evidence regarding trespassers stems principally from his testimony concerning a two week period of surveillance, a prelude to his attempted theft, in which he failed to observe any trespass to the switchgear cabinets. He bases his claim of a prior intrusion to the switchgear cabinets on evidence of the snipped padlocks and a possible single prior theft of a copper bar. That evidence is insufficient to demonstrate that trespassers *regularly* intruded into or upon the switchgear cabinets or that the defendants were aware, or should have been aware, of any previous intrusion.[15] In short, there is no evidence that would create a genuine issue of material fact that either defendant had actual or constructive knowledge that trespassers intruded into or upon the switchgear cabinets

---

[15] The plaintiff claimed that the padlocks had been cut prior to his arrival at the scene. The padlocks were, however, lying on top of the snow and the plaintiff was in possession of metal cutters.

at all, let alone regularly. Consequently, in the absence of this essential predicate, the defendants owed no duty to the plaintiff other than to refrain from injuring him intentionally or by wilful, wanton or reckless conduct, which conduct was not alleged by the plaintiff.

II

The second certified issue is whether the common-law rules as articulated in § 335 of the Restatement (Second) and set out in part I of this opinion are applicable to Northeast Utilities' operating subsidiary, CL&P, an electric company whose operations are governed by § 16-11-102 (a) of the Regulations of Connecticut State Agencies.[16] The plaintiff asserts that this regulation establishes a heightened standard of care for electric companies that supplants the traditional common-law duties applicable to possessors of land. The plaintiff's interpretation of the regulation would require that we construe the regulation as abrogating the common law regarding the existence of a duty. "In determining whether or not a statute abrogates or modifies a common-law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters *clearly* brought within its scope." (Emphasis added; internal quotation marks omitted.) *Potter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, 230, 694 A.2d 1319 (1997). That statement is equally applicable to an administrative regulation. See *Spero* v. *Zoning Board of Appeals*, 217 Conn. 435, 441, 586 A.2d 590 (1991). There is no indication that

---

[16] Section 16-11-102 (a) of the Regulations of Connecticut State Agencies provides: "Every utility shall use every effort to properly warn and protect the public from danger and shall exercise all possible care to reduce the hazard to which employees, customers and others may be subjected by reason of its equipment and facilities."

In its memorandum of decision filed on December 21, 1994, the trial court failed to discuss this regulation and, instead, based its decision on the lack of any existing duty pursuant to § 335.

§ 16-11-102 (a) was intended to change the common law concerning the existence of the duty owed a trespasser. Absent a clear intent, the regulation should not be so construed, and we decline to do so.

We reached a similar result in *Citerella* v. *United Illuminating Co.*, 158 Conn. 600, 608, 266 A.2d 382 (1969), wherein we concluded that § 16-11-102 (a) did not abrogate the common-law defense of contributory negligence. We now conclude that it also does not abrogate the common-law distinctions of duty owed based on the status of an entrant to land. This conclusion is in keeping with our recent reaffirmation of the decision to retain entrant status as controlling in the question of the duty owed by a possessor of land. *Morin* v. *Bell Court Condominium Assn., Inc.*, supra, 223 Conn. 330–31.

Furthermore, while the plaintiff's assertion that the regulation creates a heightened standard of care may or may not be accurate, it would be unnecessary to decide that issue here even if we were to interpret the regulation as derogating the common law. We conclude that § 16-11-102 (a) is irrelevant to the determination of the issue raised in the present case. "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994). Contained within the first element, duty, there are two distinct considerations. See *Chipman* v. *National Savings Bank*, 128 Conn. 493, 495–96, 23 A.2d 922 (1942). First, it is necessary to determine the existence of a duty, and then, if one is found, it is necessary to evaluate the scope of that duty. Id. "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand. *Petriello* v. *Kalman*, 215 Conn. 377, 382–83,

576 A.2d 474 (1990). If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." (Internal quotation marks omitted.) *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 384–85.

We conclude that § 16-11-102 (a), if it has any effect on common-law liability, addresses itself only to the latter aspect of the duty analysis by establishing *the scope of the duty owed*. See *LaFleur* v. *Farmington River Power Co.*, 187 Conn. 339, 341–42 n.3, 445 A.2d 924 (1982); *Citerella* v. *United Illuminating Co.*, supra, 158 Conn. 607–609. By contrast, the resolution of this case requires a determination of only the former aspect, *the existence of a duty*. Only after analyzing the traditional rules governing entrant status to determine if a duty is owed, is it necessary to proceed to an analysis of the scope of the duty. It is only in that latter context that application of the regulation might be appropriate.

Accordingly, the regulation at issue, even if it were interpreted as abrogating the common law, would not be applicable to the initial determination of the existence of a duty. The traditional common-law principles continue to control that determination. We have concluded, on the basis of those traditional, common-law principles, that neither Northeast Utilities nor its operating subsidiary, CL&P, owed a duty to the plaintiff because the plaintiff failed to present any evidence that the defendants had actual or constructive knowledge that trespassers regularly intruded upon the switchgear cabinets. Consequently, it is unnecessary to address the applicability, if any, of § 16-11-102 (a).

### III

The final certified issue is whether the Appellate Court correctly concluded that there was sufficient evi-

dence to create a material question of fact as to whether Royal Park created or maintained the switchgear that caused the injury to the plaintiff. Because we have concluded that Royal Park was unaware that trespassers entered into or upon the switchgear cabinets and owed no relevant duty to the plaintiff under these circumstances, it is unnecessary to address this question.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

MCDONALD, J., concurring. I wish to add that when a person goes onto another's property for the purpose of committing a larceny, that person's purpose is to avoid detection, apprehension and prosecution. A thief's objective, ultimately, is to go unnoticed. This is hardly a circumstance where constructive notice should arise to impose landowner liability for the condition of the property. A burglar inherently endangers himself or herself and others when committing an offense. It makes no sense that a person committing a crime should receive a greater level of protection than that given to a person playing in a sporting event. See, e.g., *Jaworski* v. *Kiernan*, 241 Conn. 399, 696 A.2d 332 (1997). Landowners simply should not be required to keep their property safe for burglars else they be held liable for negligence.

In the words of a justice of the Ohio Supreme Court, "[i]t shocks the conscience of a civilized nation that a criminal can recover large damage awards for an injury incurred while committing a crime." *Goldfuss* v. *Davidson*, 79 Ohio St. 3d 116, 129, 679 N.E.2d 1099 (1997) (Lundberg Stratton, J., concurring in part and dissenting in part).

I believe we should state unequivocally on policy grounds that a landowner is not liable for negligence in such circumstances. I therefore agree with the result reached by the majority.