[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The only issue before the court is whether a certain document, entitled "Option Agreement," created a purchaser's lien in the subject real estate under General Statutes § 49-92a.
The facts dispositive of this issue are undisputed. The defendant, Jeffrey B. Harris, recorded an "option agreement," dated September 5, 1989, in the Rocky Hill land records on December 6, 1989. The "option agreement" purports to grant the defendant the right to purchase a house lot for one dollar based on consideration including an exchange of certain other parcels of real estate. The plaintiff, H P Enterprises, now claims an ownership interest in the real estate that is the subject of the option agreement. The plaintiff is seeking a judicial declaration that any lien created by the "option agreement" is invalid pursuant to General Statutes § 49-92e.
In order to declare any lien the defendant may have on the property invalid under General Statutes § 42-92e, the "option agreement" must be a purchaser's lien under General Statutes § 42-92a. General Statutes § 42-92a provides for the creation of a "purchaser's lien" on real estate for the "amount of the deposit paid pursuant to and stated in a contract for the conveyance of land by the recording of that contract in the records of the town in which the land is situated, provided the contract is executed by the owner and by the vendee of the land, witnessed and acknowledged in the same manner as required for a deed for the conveyance of land, and describes the particular land to which it refers." The question before the court is whether the "option agreement" into which the defendant entered CT Page 3313 falls into the category of contracts affected by this statute.
In order to determine the status of the option agreement, the scope of General Statutes § 49-92a must be determined. Research has revealed that General Statutes § 49-92a has received very limited judicial treatment, and no Connecticut case has considered the scope of § 49-92a in this respect. SeeColumbia Federal Savings Bank v. International Site Consultants,40 Conn. App. 64, 68-70, 669 A.2d 594 (1995) (finding that legislature intended to submit common law equitable lien to provisions of General Statutes § 49-92a and time limitation of § 49-92c); Brown v. Rosen, 36 Conn. App. 206, 207-08,650 A.2d 568 (1994) (discussing time for appeal from judgment on a complaint to discharge a § 49-92a purchaser's lien); Societyfor Savings v. Bragg, 38 Conn. Sup. 8, 14-15, 444 A.2d 919
(1981), overruled by Columbia Federal Savings Bank v.International Site Consultants, supra, 40 Conn. App. 68-70;Robotham v. Knap, Superior Court, judicial district of Litchfield, Docket No. 055656 (April 19, 1991, Susco, J.).
The Connecticut Supreme Court has explained that while interpreting a statute, "[w]hen the language of the statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." State v. White, 204 Conn. 410, 421,528 A.2d 811 (1987). A court's "`fundamental objective is to ascertain and give effect to the apparent intent of the legislature.'" Edelstein v. Department of Public Health andAddiction Services, 240 Conn. 658, 664, 692 A.2d 803 (1997), quoting State v. Metz, 230 Conn. 400, 409, 645 A.2d 965 (1994). "[P]rinciples of statutory construction require the court to construe a statute in a manner that will not frustrate its intended purpose. . . ." General Accident Ins. Co. v. Powers,Bolles, Houlihan Hartline, Inc., 50 Conn. App. 701, 708,719 A.2d 77 (1998), cert. granted on other grounds, 247 Conn. 954,___ A.2d ___ (1999). "Statutes are to be construed to give affect to the apparent intention of the lawmaking body . . . and where legislative intent is clear, there is no room for statutory construction." (Citation omitted.) Nationwide Mutual Ins. Co. v.Passion, 219 Conn. 764, 769, 645 A.2d 965 (1991).
The language of the statute itself indicates that purchaser's liens arise from contracts to sell real estate. The name given to the lien, "purchaser's lien," indicates a situation where property is being sold. See General Statutes § 49-92a. The CT Page 3314 amount of the lien is determined by the "amount of the deposit paid pursuant to and stated in a contract for the conveyance of land. . . ." General Statutes § 49-92a. The contract must be "executed by the owner and by the vendee of the land." General Statutes § 49-92a. This language evidences the legislature's intent to protect purchasers who have placed deposits on real estate during the executory period of the contract of sale.
Although the court is not required to look beyond the plain meaning of the statute, the intent of the legislature to protect purchasers of real estate who make deposits on land is further evidenced in the legislative history of General Statutes §49-92a. In the House of Representatives, Representative Satter stated that "[t]he purpose of the bill, obviously, is to protect the purchasers of homes from builders who may go bankrupt." 11 H.R. Proc., Pt. 5, 1965 Sess., p. 2403. Representative Ratchford explained that the bill was designed to prevent situations where developers take large down payments and, before the closing, the bank forecloses on the property leaving the potential buyers at a loss. 11 H.R. Proc., supra, p. 2405. Senator Falsey explained that "[i]n general . . . it's designed to protect the person who puts down his purchase money for a home and finds that the builder has absconded or gone sour in some way." 11 S. Proc., Pt. 6, 1965 Sess., p. 1968. This legislative history further supports the plain language of General Statutes § 49-92a and indicates that the statute generally applies to contracts for the sale of land on which a deposit has been made.
The defendant filed an "option agreement" that purported to give him the right to purchase the land in question for one dollar. That agreement is not "a contract for the conveyance of land" under General Statutes § 49-92a. Section 49-92a creates a lien equal to the amount of the deposit. Although the "option agreement" does recite certain consideration in the exchange of other parcels of real estate, it does not state an amount of deposit against which the amount of a purchaser's lien may be measured. The legislative history discloses that, by enacting General Statutes § 49-92a, the legislature intended to protect deposits on contracts for the sale of land during the time between the deposit was made and the deal was closed. The "option agreement" at issue is not the type of agreement that the legislature intended to protect by creating the purchaser's lien statute. Whether this "option agreement" qualifies as an option to purchase under General Statutes § 47-33a is not an issue before the court. CT Page 3315
For the reasons stated this court finds that the "option agreement" in the present case did not create a purchaser's lien under General Statutes § 49-92a. As General Statutes §49-92e provides for the discharge of purchaser's liens only, the court cannot rely on that statute to declare any lien created by the agreement invalid. The court holds that the plaintiff is not entitled to relief under CGS § 49-92 a — e. Judgment may enter in favor of the defendant Jeffrey B. Harris.
Hennessey, J.