[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGEMENT #101, #106
The plaintiff, Lorrie Capuano, filed a ten-count amended complaint against the defendant, Millward Brown, Inc. (Millward Brown), on March 5, 1997. The plaintiff was formerly employed by Millward Brown. Upon her resignation, the plaintiff signed a release. The plaintiff has brought causes of action against Millward Brown for sexual discrimination under 42 U.S.C. § 2000e-2
(a), discriminatory employment practices under General Statutes § 46a-60 (8), the Americans with Disabilities Act under 42 U.S.C. § 1201, breach of contract, promissory estoppel, intentional infliction of emotional distress, negligent infliction of emotional distress, and breach of implied contract.[1]
On March 3, 1997, the plaintiff filed a motion for summary judgment on the ground that the release agreement is null and void. Millward Brown filed its own motion for summary judgment on April 16, 1997 on the ground that the release is valid and enforceable and bars all of the plaintiff's claims. The plaintiff filed an objection to Millward Brown's motion for summary judgment on May 22, 1997. Millward Brown filed a reply in support of its motion on October 10, 1997. The matter was heard by the court on May 4, 1998.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere CT Page 9528 assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . ." (Internal quotation marks omitted.)Maffucci v. Royal Park Limited Partnership, 243 Conn. 552,554-55, 707 A.2d 15 (1998).
 A. Effect of Choice of Law Provision in the Agreement
"[I]n accordance with § 187 of the Restatement [(Second) of Conflict of Laws (1971)[2] . . . parties to a contract generally are allowed to select the law that will govern their contract, unless either: `(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.'" Elgar v. Elgar, 238 Conn. 839,850-51, 679 A.2d 937 (1996). The subject agreement states that it is to be governed by Illinois law. (Motion For Summary Judgment, Exhibit A). Neither of the Restatement exceptions apply, as Millward Brown has a corporate office in Naperville, Illinois. (Motion For Summary Judgment, Exhibit A; Exhibit B; Exhibit D). Also, the parties have not raised any argument demonstrating that the application of Illinois law to the parties' claims will defeat some superior Connecticut interest. In fact, each side has briefed the issues using both second and seventh circuit cases for support. For these reasons, the court will give effect to the parties' election to have their agreement governed by Illinois law.
 B. Older Workers Benefit Protection Act
The plaintiff argues the release signed on or about April 30, 1995 was not a valid contract and is null and void. The plaintiff contends that the release was not voluntary and knowing, was coerced and signed under duress, was unconscionable, ambiguous, unclear, was a violation of the Older Workers Benefit Protection Act (OWBPA), and because Millward Brown breached the terms of the agreement. The plaintiff, while conceding that she has been unable to find cases applying the OWBPA to Title VII claims, urges that court to do so, because federal courts have applied CT Page 9529 Title VII provisions to cases under the Age Discrimination in Employment Act (ADEA) on the grounds that both share the common purpose of eliminating discrimination from the workplace. The plaintiff maintains that if the OWBPA is extended to cover the facts of this case, the release did not contain provisions which have been required in employment cases to protect the rights of employees. Therefore, the plaintiff argues, as a result of these deficiencies, the release was unfair and that as a matter of law, it was not knowing and voluntary. Millward Brown argues that the OWBPA does not apply to claims made under Title VII and the ADA, because by its terms, the OWBPA applies only to age discrimination claims under the ADEA and not to waivers of other types of discrimination claims.
The purpose of the ADEA is "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621 (b). "In 1990, Congress amended the ADEA by passing the OWBPA. The OWBPA provides: An individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary . . . . [A] waiver may not be considered knowing and voluntary unless at a minimum it satisfies certain enumerated requirements . . . . The statutory command is clear: An employee may not waive' an ADEA claim unless the waiver or release satisfies the OWBPA's requirements. The policy of the Older Workers Benefit Protection Act is likewise clear from its title: It is designed to protect the rights and benefits of older workers . . . . An employee may not waive' an ADEA claim unless the employer complies with the statute." (Internal quotation marks omitted.) Oubre v. Energy Operations,Inc., 522 U.S. ___, ___, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998). Therefore, it was Congress' intent to make the OWBPA criteria set forth in 29 U.S.C. § 626 (f) applicable only to claims brought under the ADEA. The plaintiff has not brought such a claim, and so the court need not apply the specific requirements of 29 U.S.C. § 626 (f) to the plaintiff's Title VII and ADA claims.
 C. Unconscionable and Ambiguous
The plaintiff also argues that even if the OWBPA is not extended to the facts here, the release should still be found to be null and void because it was unconscionable. According to the plaintiff, the severance package was offered on a take it or CT Page 9530 leave it basis. The plaintiff also argues that the terms of the release were drafted by Millward Brown, and that those terms are ambiguous.[3] Millward Brown argues that there was no duress as a matter of law, because the plaintiff was given a draft agreement to review without a deadline for signing it, the plaintiff indicated she would be discussing the terms with her attorney, and that she personally negotiated three to five drafts over a three-week period as well as additional terms after signing the release.
"Duress has been universally defined as a condition which exists where one is induced by the unlawful act of another to make a contract or perform or forego an act under circumstances which will deprive him of the exercise of his free will. There must be such compulsion affecting the mind as shows that the execution of the contract or other instrument was not the voluntary act of the maker. Such compulsion must be present and operate at the time the instrument was executed. The burden of proving such duress is on the person asserting it." People v.Catholic Home Bureau, 213 N.E.2d 507, 511 (1966). The defense of duress does not exist "where consent to an agreement is secured because of mere hard bargaining or the pressure of financial circumstances. Rather, the conduct of the party obtaining the advantage must be manifestly tainted with some degree of fraud or wrongdoing in order to invalidate an agreement on the basis of duress." Carlile v. Snap-On Tools, 648 N.E.2d 317, 322, cert. denied, 657 N.E.2d 617 (1995).
The plaintiff has submitted an affidavit in which she avers that she "was not in a normal, business-like state of mind mentally and physically during the time that this agreement was entered into." (Motion For Summary Judgment, Exhibit C, Affidavit of Lorrie Capuano, ¶ 2). The plaintiff also avers that she had gone out on medical disability leave on March 13, 1995 when she received a call regarding the separation package, that she was not instructed to seek legal counsel "and in effect was given no choice but to sign the agreement at issue in this case." (Capuano Affidavit, ¶ 2).
Millward Brown has countered this assertion with the affidavit of Robert G. Godfrey, Millward Brown's Human Resources Director. Godfrey avers that on March 13, 1995, he provided the plaintiff with a draft separation agreement containing the severance offer without giving the plaintiff a signing deadline. (Defendant's Motion For Summary Judgment, Affidavit of Robert G. CT Page 9531 Godfrey, ¶ 4). Godfrey attests that the plaintiff stated that she would review the draft with her attorney before finalizing and executing it. (Godfrey Affidavit, ¶ 5). Over the span of several weeks, Godfrey and the plaintiff exchanged three to five drafts of the agreement, and the plaintiff negotiated a number of changes to the draft which were incorporated into the final agreement signed on March 30, 1995. (Godfrey Affidavit, ¶¶ 6 7).
Based upon the conflicting affidavits submitted by the parties, a genuine issue of material fact exists concerning whether the agreement should survive legal scrutiny. Accordingly, both parties' motions for summary judgment are denied.
Skolnick, J.