[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#161)
On February 29, 1996, the Federal Deposit Insurance Corporation (EDIC), as receiver of Merchants Bank and Trust Company (MET), filed this foreclosure action against the defendants, James Burton, George J. Lepovsky as Trustee, Paul 
Rosalyn Hiller d/b/a Hiller Real Estate Association, Wendy S. Coren d/b/a Coren Chiropractic Care Center, and Audiotronics do its agent for service Jules Lang. On February 18, 1997, the FDIC filed a motion to substitute Wilshire Credit Corporation as plaintiff due to an assignment of the mortgage deed in question, CT Page 11326 which motion was granted on February 24, 1997. (Motion to Substitute Party Plaintiff # 113.50.) On July 3, 1997, Wilshire filed an amended complaint, which alleged the following facts. (Amended Complaint # 122.)
On January 31, 1991, the Connecticut Commissioner of Banking declared MET insolvent and appointed the IFDIC as receiver of MET. (Amended Complaint ¶ 8.) The FDIC pursuant to 12 U.S.C. § 1821
took possession of MET's assets and succeeded, by operation of law, to all of the rights, titles, powers and privileges of MET's assets, which included the mortgage deed at issue in the present action. (Amended Complaint ¶ 9.) On or about June 8, 1984, the defendant, James E. Burton, executed and delivered to MBT a promissory note and secured the note by a mortgage deed on real property located at 16-18 Isaac Street, a/k/a 29 Isaac Street in Norwalk, Connecticut. (Amended Complaint ¶ 3, 4 and 5.) Burton also executed and delivered to MBT a Conditional Assignment of Rentals to further secure the note. (Amended Complaint ¶ 6.) Wilshire claims that Burton has failed to pay sums due under the note, has defaulted and breached the note, which it now owns and holds by virtue of the FDIC assignment. (Amended Complaint ¶¶ 11 and 13.)
The complaint names George J. Lepovsky as Trustee, Paul 
Rosalyn Hiller d/b/a Hiller Real Estate Association, Wendy S. Coren d/b/a Coren Chiropractic Care Center, and Audiotronics do its agent for service, Jules Lang, as defendants due to their interest in the subject property. George J. Lepovsky claims or may claim an interest in the property by virtue of a mortgage from James E. Burton dated November 4, 1981, which is subordinate to the MET mortgage per a subordination agreement of June 7, 1984. (Amended Complaint, ¶ 14.) Paul Rosalyn Hiller d/b/a Hiller Real Estate Association claim or may claim an interest in the property by virtue of an attachment dated January 2, 1985 which is subsequent to the MET mortgage. (Amended Complaint, ¶ 15.) Both Wendy S. Coren d/b/a Coren Chiropractic Care Center and Audiotronics claim or may claim an interest in the subject property by virtue of each of their unrecorded leasehold interests which are subsequent and subordinate to the MET mortgage. (Amended Complaint, ¶ 17.) Also, Wilshire claims that the FDIC, as receiver of MET, claims or may claim an interest by virtue of a lease dated August 15, 1983. (Amended Complaint, ¶ 16.) Finally, Wilshire claims that Burton is the record owner and is in possession of the subject property. (Amended Complaint, ¶ 19.) CT Page 11327
Wilshire seeks the following relief: 1) strict foreclosure, in the alternative, foreclosure by sale if the United States of America is a party defendant at time of judgment; 2) immediate possession of the subject property; 3) an order of ejectment pursuant to General Statutes § 49-22: 4) appointment of receiver to collect rent and profits; 5) costs, including attorney's fees; 6) a deficiency judgment against Burton; 7) an order of weekly payments against Burton; and 8) other relief the court deems just and proper. (Amended Complaint.)
Prior to the substitution of Wilshire as plaintiff, Burton filed an answer with special defenses and a counterclaim against the EDIC. Following the filing of the amended complaint by Wilshire, Burton filed an answer to the amended complaint filed which included special defenses and a counterclaim against the EDIC and Wilshire. On July 18, 1997, Wilshire filed a request to revise Burton's special defenses. On July 23, 1997, Burton filed a revised answer with special defenses, counterclaim and set-off. Burton asserted seven special defenses: 1) the FDIC failed to advise him of its ownership of the mortgage, therefore it would be inequitable and unjust to permit the plaintiff to proceed directly to foreclosure; 2) the FDIC failed to declare a default, therefore it would be inequitable and unjust to permit the plaintiff to proceed directly to foreclosure; 3) the FDIC failed to accelerate the debt, therefore it would be inequitable and unjust to permit the plaintiff to proceed directly to foreclosure; 4) the FDIC failed to notify Burton of when and where to send any monthly payments, therefore it would be inequitable and unjust to permit the plaintiff to proceed directly to foreclosure; 5) the purported assignment of the mortgage by the FDIC to Wilshire is invalid and improper because the assignment is defective; 6) the FDIC's assignment is invalid because prior to the assignment Burton had a counterclaim pending against the FDIC and; 7) the purported assignment was an attempt to split the prosecution of the foreclosure and therefore improper and invalid.
Burton alleges the following facts in his counterclaim against the FDIC and Wilshire. Under count one, Burton claims that the FDIC entered into occupancy under a lease dated August 15, 1983; however, the FDIC failed to abide by the terms of the lease and failed to make payments. Burton also alleges that the FDIC abandoned the premises leaving equipment and property on the premises, and thus made it impossible for him to rent the CT Page 11328 premises to another tenant. Under count two, Burton claims that the FDIC failed to notify him of their ownership of the mortgage, to declare a default or to accelerate the mortgage, and when and where to send monthly payments. Burton also alleges that the FDIC's acts were unreasonable and constitute a CUTPA violation. Under count three, Burton alleges that the FDIC's alleged assignment to Wilshire was improper, and the FDIC's acts were unreasonable and constitute a CUTPA violation. Under count four, Burton claims that Wilshire's acceptance of the assignment from the FDIC was improper and constitutes a CUTPA violation.
On December 18, 1998, the FDIC filed a motion for summary judgment with respect to counts one, two and three of Burton's counterclaim. The FDIC asserts that Burton failed to comply with the receivership claims process set forth in 12 U.S.C. § 1821 (d) and, therefore, the court lacks subject matter jurisdiction over the claims. In the alternative, the FDIC asserts that Burton is not entitled to recover any damages from the FDIC as receiver, except as may be provided in 12 U.S.C. § 1821 (e)(4), and that the FDIC is exempt from any CUTPA claims pursuant to General Statutes § 42-1 loc. Therefore, the FDIC asserts that there is no genuine issue of material fact and it is entitled to a judgment as a matter of law against Burton. The FDIC attached an affidavit from Peter H. McDonald, FDIC Department Head, Claims/NADL, and several exhibits to support its motion for summary judgment. Burton filed a memorandum and affidavit opposing the FDIC's motion and refers the court to attachments he submitted with a memorandum in opposition (#158) a motion for summary judgement filed by the plaintiff, Wilshire.
"The standard of review for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the CT Page 11329 existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment. (Citations omitted; internal quotation marks omitted.) Maffucci v. Royal Park Ltd. Partnership,243 Conn. 552, 554, 707 A.2d 15 (1998).
In its supporting memorandum, the FDIC first contends that Burton's failure to comply with the receivership claims process of 12 U.S.C. § 1821 (d) deprives the court of subject matter jurisdiction; therefore, his claims against the FDIC should be dismissed. In opposition, Burton asserts that the counterclaims against the FDIC are not independent actions, but are defenses and setoffs against the enforcement of the mortgage. Burton asserts that the regulations relied on by the FDIC apply only to offensive claims, and do not apply to defense claims.
"[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case . . . Subject matter jurisdiction, unlike jurisdiction of the person, cannot be created through consent or waiver . . ." (Citation omitted; internal quotation marks omitted.) Figueroa v. C S BallBearing, 237 Conn. 1, 4-5, 675 A.2d 845 (1996). "A lack of jurisdiction is generally raised by a motion to dismiss rather than a motion for summary judgment. In a case such as this, however, this court may treat the defendants' motion for summary judgment as a motion to dismiss. (Citation omitted.) Krajewksi v.Area Cooperative Educational Service, Superior Court, judicial district of New Haven at New Haven, Docket No. 374594 (July 31, 1998) (Levin, J.).
Section 1821(d) of 12 U.S.C. Powers and duties of Corporation[1] as conservator or receiver, provides in pertinent part:
 (1) Rulemaking authority of Corporation. The Corporation may prescribe such regulations as the Corporation determines to be appropriate regarding the conduct of conservatorships or receiverships.
(3) Authority of receiver to determine claims. CT Page 11330
 (A) In general. The Corporation may, as receiver, determine claims in accordance with the requirements of this subsection and regulations prescribed under paragraph (4).
 (B) Notice requirements. The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall
 (i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice; and
 (ii) republish such notice approximately 1 month and 2 months, respectively, after the publication under clause (i).
. . .
(13)
. . .
 (D) Limitation on judicial review. Except as otherwise provided in this subsection, no court shall have jurisdiction over
 (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
 (ii) any claim relating to any act or omission of such institution or the Corporation as receiver. . . .
In Danbury Savings and Loan Association v. Scalzo, Superior Court, judicial district of Danbury, Docket No. 301539 (March 13, 1997, Stodolink, J.) (19 Conn. L. Rptr. 230), the court dismissed the defendant's counterclaim against the Resolution Trust Corporation[2] (RTC) due to the defendants failure to exhaust administrative remedies. In Danbury Savings and Loan Associationv. Scalzo, the defendant filed a counterclaim against the RTC after it was appointed receiver for a failed banking institution without exhausting the administrative remedies available pursuant CT Page 11331 to 12 U.S.C. § 1821 (d)(13)(D) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA). The court held that the federal statute divests the courts of jurisdiction over both claims and counterclaims against the RTC or the institution until the claimants have exhausted the administrative procedures created by the act. Danbury Savings and LoanAssociation v. Scalzo, supra, 19 Conn. L. Rptr. 230.
Recently, the Second Circuit addressed the issue as to whether the notice provisions of 12 U.S.C. § 1821
(d)(3)(C)(ii)[3] impose a jurisdictional bar. Carlyle TowersCondominium Association v. FDIC, 170 F.3d 301 (2d Cir. 1999). InCarlyle Towers Condominium Association, the plaintiff had filed an earlier action in the New Jersey Superior Court, on June 23, 1995, against, inter alia, two banking institutions, Old Crossland and New Crossland, alleging structural defects in its condominium units. The FDIC, appointed as receiver for Old Crossland on January 24, 1992, initially published notice to creditors to present claims in accord with § 1821(d)(3)(B)(i) and set May 8, 1992, as a bar date for creditors to present those claims. Also, after the plaintiff in Carlyle Towers Condominium Association filed its state court action, the FDIC sent the plaintiff a letter, on August 21, 1995, pursuant to 12 U.S.C. § 1821
(d)(3)(C)(ii). The FDIC letter stated that the plaintiff had 90 days to file a proof of claim; however, the plaintiff did not file a proof of claim until February 6, 1996, well beyond the 90 day limit. Subsequently, after the FDIC disallowed the plaintiffs claim, it initiated a district court action against the FDIC on May 16, 1996, which incorporated by reference the amended complaint filed in the state court action against the banking institutions. The district court dismissed the plaintiffs action due to the lack of subject matter jurisdiction. Carlyle TowersCondominium Association v. FDIC, supra, 170 F.3d 304. The district court found that although the plaintiffs claim had arisen after the bar date, it must still exhaust administrative remedies for the court to have subject matter jurisdiction. Id., 305. Under a de novo review, the Second Circuit reviewed the statutory construction and legislative history associated with the exhaustion requirements of FIRREA, and found that timely filing and the notice provisions of the FIRREA cannot act a jurisdictional bar where the plaintiffs claim arose after the bar date. Id., 310.
Also, the Tenth Circuit, affirmed a district court's denial of a motion to dismiss where the plaintiffs claims against the CT Page 11332 RTC arose after receivership. Homeland Stores. Inc. v. ResolutionTrust Corp. , 17 F.3d 1269 (10th Cir. 1994). In Homeland Stores,Inc. v. Resolution Trust Corp. , the court held that "the term "claim' as used in § 1821(d)(13)(D) should be interpreted to exclude claims such as Homeland's arising from management actions of the RTC after taking over a depository institution." HomelandStores. Inc. v. Resolution Trust Corp. , supra, 17 F.3d 1274.
In the present case, Burton's counterclaim against the FDIC relates to post receivership actions: breach of the lease, failure to notify of its ownership of the mortgage, and improper assignment amounting to a CUTPA violation. Therefore, pursuant toCarlyle Towers Condominium Association v. FDIC and HomelandStores. Inc. v. Resolution Trust Corp. , this court has subject matter jurisdiction over Burton's counterclaim.
As to the first count of Burton's counterclaim, the FDIC maintains that by statutory authority it may repudiate any lease wherein the failed bank is the lessee and that any damages for repudiation are limited to the contractual rent accrued prior to and up to the effective date of repudiation. In opposition, Burton asserts that the FDIC by its own independent conduct of occupying the premises and causing damages, contradicts and negates the FDIC's alleged repudiation.
Section 1821(e)(1) of 12 U.S.C. provides in pertinent part: "Authority to repudiate contracts. In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease . . ."
Section 1821(e)(1) of 12 U.S.C. grants the FDIC the authority to disaffirm or repudiate any contract or lease to which MBT was a party. Also, the statute has provisions regarding any unpaid rent under the lease: "[S]ection 1821(e)(4)(B) provides that a claimant has the right to "unpaid rent due at the date of appointment of the receiver, and "contractual rent' accruing before the latter of the date that the notice of disaffirmance or repudiation is mailed or the date it becomeseffective." (Emphasis added.) First Bank Nat. Ass'n v. F.D.I.C.,79 F.3d 362, 368 (3rd Cir. 1996). [C]ontractual rent' refers only to those sums that are fixed, regular, periodic charges." Id., 369. The lease between Burton and MET provided for monthly installments of $6287. (Plaintiffs Memorandum in Support, Exhibit E.) Therefore, based on the statutory guidelines, the FDIC may be CT Page 11333 liable for rent accrued from January 31, 1991 to May 8, 1991. The FDIC has not submitted any evidence that any rental payments were made post receivership before the effective date of repudiation; therefore, a genuine issue of fact exists as to count one of Burton's counterclaim. The court denies the FDIC's motion for summary judgment as to count one.
Both counts two and three of Burton's counterclaim allege CUTPA violations based upon the FDIC's alleged conduct associated with its foreclosure on the mortgage deed.
"It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the "cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three . . . [A] violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy . . . Furthermore, a party need not prove an intent to deceive to prevail under CUTPA . . ." (Citations omitted; internal quotation marks omitted.)Willow Springs Condominium Assn., Inc. v. Seventh BRTDevelopment Corp. , 245 Conn. 1, 43, 717 A.2d 77 (1998).
Burton alleges that the FDIC failed to notify him of its ownership of the mortgage and failed to declare a default or to accelerate the mortgage. The FDIC submitted a copy of the letter it sent to creditors announcing its appointment as receiver and requesting proof of any preclosing claims. (Plaintiffs Memorandum, Exhibit C.) The FDIC listed Burton as a creditor and indicated the date the letter was mailed. Also, in a letter dated August 19, 1993 sent to Burton, the FDIC clearly indicated that it now owned the loan that MET extended him, that the loan was in default and demanded payment in full of the principal balance plus interest and any late charges. (Plaintiffs Memorandum, Exhibit D.) CT Page 11334
In his opposing memorandum and affidavit, Burton did not present any evidence to dispute the FDIC's evidence. "[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue . . ." Maffucci v. Royal Park Ltd. Partnership, supra,243 Conn. 554. Most of Burton's assertions in his supporting affidavit relate to the lease between himself and MET. (Defendant's Opposing Memorandum, Burton's Affidavit.) Burton asserts that he does not recall receiving notice regarding the acceleration of the mortgage, which amounts to his only assertion regarding the mortgage deed in his affidavit. (Defendant's Opposing Memorandum, Burton's Affidavit6 25.) This assertion, however, does not demonstrate a material fact, because the mortgage deed clearly provides that "notice of the exercise of any option granted to the grantee [MET] herein or in said note is not required to be given, the grantor [Burton] hereby waiving any notice." (Plaintiffs Memorandum, Exhibit A.)
Under count three, Burton alleges that the FDIC's assignment of the mortgage to Wilshire Credit was unreasonable and improper conduct. Burton has failed to submit any evidence to support his allegation of improper assignment. The mortgage deed in question does not contain any clause that restricts or prohibits the assignment of the mortgage. Also, it states that "the benefits and advantages shall inure to, the respective heirs, executors, administrators, successors and assigns of the parties hereto." (Plaintiffs Memorandum, Exhibit A.) Burton has failed to submit evidence to refute the provisions of mortgage deed or to demonstrate improper, immoral, unscrupulous or unethical conduct regarding the FDIC's assignment of the mortgage to Wilshire Credit. Also, Burton, as discussed above, has failed to submit any evidence as to his allegations regarding the FDIC's failure to notify him of ownership and acceleration of the loan that would demonstrate immoral, unscrupulous or unethical conduct. Therefore, the court grants the FDIC's motion for summary judgment as to counts two and three.
Hickey, J.