[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANTS' UNITED RENTALS, INC. AND MCCLINCH EQUIPMENT CORP.'S MOTION FOR SUMMARY JUDGMENT (#174)
Pursuant to Connecticut Practice Book § 17-44 et seq., defendants United Rentals, Inc. and McClinch Equipment Corp. ("United defendants") have moved for summary judgment on the Fourth Count of the plaintiff's Third Revised Complaint, dated December 15, 2000. The Fourth Count sets forth a cause of action pursuant to Connecticut General Statutes §52-572 et seq., the Connecticut Product Liability Act-1 ("CPLA") against said defendants. These defendants claim they are entitled to summary judgment because plaintiff failed to disclose an expert witness and thus cannot establish liability based on a defective product.
The present action arises from an accident that occurred at a Shaw's Supermarket construction site at the Brass Mill Center in Waterbury, Connecticut. The plaintiff alleges that on October 6, 1998, he was injured while using a mechanical/hydraulic lift at the site. Specifically, the plaintiff alleges that the lift and/or its controls failed to operate properly causing it to roll and topple over as a result of an elevation change in the cement flooring.
The plaintiff's Third Revised Complaint contains six counts. The First Count is against C. Raimondo Sons Construction Co., Inc. ("Raimondo"), the general contractor at the job site. The plaintiff alleges negligence on the part of Raimondo for, inter alia, creating and maintaining a job site that was in a dangerous and hazardous condition. The Second and Third Counts are against GGP/Homart, Inc. and Shaws Supermarket, Inc., respectively, and contain similar allegations of negligence.
The Fourth Count sets forth a cause of action pursuant to the CPLA against the United defendants. The plaintiff alleges that United, who acquired McClinch in November 1998, was engaged in the business of leasing and/or selling hydraulic/mechanical lifts used on construction sites. The plaintiff alleges that the lift that he was using and which CT Page 11085 caused his injuries had been rented, leased and/or sold by United to his employer for use at the Shaw's Supermarket construction site and was defective.
The United defendants claim they are entitled to summary judgment because plaintiff has failed to disclose an expert witness relative to liability and without such evidence plaintiff cannot establish that the mechanical/hydraulic lift at issue was defective and unreasonably dangerous. In support of this claim, defendants cite Potter v. ChicagoPneumatic Tool Co., 241 Conn. 199 (1997). Plaintiff agrees that the seminal case concerning Connecticut product liability law is Potter, but argues that Potter does not require expert testimony in CPLA cases as a matter of law.
In Potter, the plaintiffs claimed that they were injured in the course of their employment as shipyard workers at the General Dynamics Electric Boat facility in Groton, Connecticut as a result of using pneumatic tools manufactured by the defendants. Specifically, the plaintiffs claimed they developed "hand arm vibration syndrome" due to the excessive vibration of the tools during their use. The plaintiffs claimed that the subject tools were defectively designed and that the defendants failed to provide adequate warnings concerning their excessive vibration. The trial court rendered judgment on jury verdicts in favor of the plaintiffs. The defendants appealed and the plaintiffs cross appealed.
The Connecticut Supreme Court reversed the judgment of the trial court in Potter and ordered a new trial. The court held that "the trial court's instruction with respect to the alteration or modification defense improperly shifted to the defendants the burden of disproving an essential element of the plaintiff's case." Potter, supra at 203-204. However, in coming to this decision, Justice Katz undertook an exhaustive analysis of the evolution of modern products liability law beginning with Justice Cardozo's landmark case of MacPherson v. Buick Motor Co.,217 N.Y. 382, 111 N.E. 1050 (1916) and continuing through with the development of Connecticut's products liability law. Id. at 207.
Potter is significant because it outlines the two standards courts should apply in determining whether a defect renders a product unreasonably dangerous. First, in order to prove that a product is "unreasonably dangerous", the plaintiff must present evidence that the product is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Potter, supra at 214-215. This standard has come to be known as the "consumer expectation standard." Id. at 215. CT Page 11086
The defendants in Potter sought to have the court abandon the consumer expectation standard and adopt a requirement that the plaintiff must prove the existence of a reasonable alternative design in order to prevail on a design defect claim. Id. at 215. However, the court declined to "accept the defendants' invitation." Id. It should be noted that one of the reasons that the court declined to abandon the consumer expectation standard was that the new standard, proposed by the defendants, "would require plaintiffs to retain an expert witness even in cases in which lay jurors can infer a design defect from circumstantial evidence." Potter, supra at 217-218. The court went on to note that "Connecticut courts . . . have consistently stated that a jury may, under appropriate circumstances, infer a defect from the evidence without the necessity of expert testimony." Id. at 217-218.
Although the Potter court made clear that they "would continue to adhere to [their] long-standing rule that a product's defectiveness [would] be determined by the expectations of an ordinary consumer . . .", the court did point out that "there may be instances involving complex product designs in which an ordinary consumer may not be able to form expectations of safety." (Citations omitted.) Id. at 219-220. Thus, in cases involving "complex products", the court adopted the "modified consumer expectation test." "The modified consumer expectation standard provides the jury with the product's risks and utility and then inquires whether a reasonable consumer would consider the product unreasonably dangerous." Id. at 220. The court went on to make clear that this modified consumer expectation test does not apply to every case.
 "Although today we adopt a modified formulation of the consumer expectation test, we emphasize that we do not require a plaintiff to present evidence relating to the product's risks and utility in every case. As the California Court of Appeals has stated: `There are certain kinds of accidents — even where fairly complex machinery is involved — [that] are so bizarre that the average juror, upon hearing the particular, might reasonably think: "Whatever the user may have expected from that contraption, it certainly wasn't that." Akers v. Kelley Co., 173 Cal. Appl.3d 633, 651, 219 Cal.Rptr. 513 (1985). Accordingly, the ordinary consumer expectation test is appropriate when the everyday experience of the particular product's users permits the inference that the product did not meet minimum safety expectations. See, Soule v. General Motors Corp., 8 Cal.4th 548, 567, 882 P.2d 298, CT Page 11087 34 Cal.Rptr.2d 607 (1994)."
Potter, supra at 221-222.
 "[I]t is the function of the trial court to determine whether an instruction based on the ordinary consumer expectation test or the modified consumer expectation test, or both, is appropriate in light of the evidence presented. In making this determination, the trial court must ascertain whether, under each test, there is sufficient evidence as a matter of law to warrant the respective instruction." (Citations omitted.) Potter, supra at 223.
Practice Book § 17-49 provides that "Summary Judgment shall be rendered forthwith if the pleadings, affidavits and any other proofs submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In deciding the motion for summary judgment, the trial court must view the evidence in the light most favorable to the non-moving party. Dowling v.Finely Associates, Inc., 248 Conn. 364 (1999); Maffucci v. Royal ParkLtd. Partnership, 243 Conn. 552, 540 (1998). The party seeking summary judgment has the burden of showing the absence of any genuine issue of material fact which, under applicable principles of substantive law, entitles him to judgment as a matter of law. D.H.R. Construction Co. v.Donnelly, 180 Conn. 430, 434 (1980).
Under Potter, the appropriate standard to be applied for establishing a defect in the product depends on the evidence. Here, plaintiff has alleged and supported his claim that the product controls malfunctioned, which may be sufficient to establish a defect without expert testimony. Defendants argue the mechanical/hydraulic lift is a complex product requiring expert testimony to establish any defect and thus impose liability. On defendants' motion for summary judgment, the court is bound to construe the allegations in favor of plaintiff. This court cannot determine as a matter of law which standard will apply or whether expert testimony may be required at trial. This is an issue for the trial judge after hearing the evidence. Accordingly, the United defendants' motion for summary judgment is denied.
The Court
By__________________ Sequino, J. CT Page 11088