[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
Presently before the court is the defendant's motion for summary judgment.[1] The plaintiff, Moises Pagan, brought this retalitory discharge action against the defendant, Floyd Manufacturing Company, Inc., after being terminated from his employment.
The plaintiff's revised complaint in four counts alleges the following relevant facts. The plaintiff was employed by the defendant from February 7, 1997, through July 9, 1998. On June 8, 1997, the plaintiff sustained an injury at work, which was subsequently diagnosed as bilateral inguinal hernias. On or about June 13, 1997, the plaintiff filed a workers' compensation claim for the injury. He also remained out of work on account of the injury until September 2, 1997, when he received medical permission to return "to work with restrictions of no heavy lifting and no strenuous activity." (Count One, ¶ 11.)
The plaintiff alleges that although the defendant had light duty work available upon his return, it failed to provide him with such work which met the no heavy lifting restriction. The plaintiff suffered further injury within days of returning to work. On September 14, 1997, the plaintiff "was instructed by his CT Page 2369 physician to remain out of work for at least two weeks" and not to perform any manual labor, including lifting, for at least six weeks thereafter. (Count One, ¶ 16.)
Upon Pagan's return to work on November 7, 1997, an employee of the defendant determined that the plaintiff should remain "home for an additional two weeks in order for the wound to fully heal and close." (Count One, ¶ 21.) The plaintiff subsequently returned to work on light duty status on or about November 25, 1997. Per doctor's orders, the no heavy lifting restriction remained in effect. The plaintiff alleges that although light duty "work which would comply with the weight restriction was available . . . [he] was assigned to work a machine which required him to lift buckets of coolant which exceeded the twenty pound weight restriction." (Count One, ¶¶ 23, 24.)
The plaintiff further alleges that upon his return, the defendant, through its employees, began retaliating against him for filing the workers' compensation claim in the following ways: the plaintiff's supervisor, Maximino Nieves, falsely accused him of unexcused absences and deliberately ignored his requests for assistance. Additionally, Nieves allegedly embarrassed and humiliated the plaintiff in the presence of coworkers by slamming down paperwork on which the plaintiff made an error and "announcing his mistake so that all would hear." (Count One, ¶ 31.)
On or about July 3, 1998, the plaintiff requested time off to attend the funeral of his niece. The defendant, through its employees, allegedly granted his request, saying that "time-off would not be a problem since the plant was closed down during this time period." (Count One, ¶ 34.) According to the revised complaint, the defendant's plant was closed from at least July 4, through July 8, 1998. Although the plant was closed on July 8, 1998, the plaintiff went to his workplace to pick up his check. He received a pink slip along with his check stating that "he was terminated for excessive absence." (Count One, ¶ 36.)
In count one, the plaintiff alleges that he was terminated in violation of General Statutes § 31-290a[2] for filing a workers' compensation claim. In count two, the plaintiff alleges that "[b]y virtue of the policies . . . in the defendant's employee manual, and as established by custom and practice, the defendant expressly promised [the] plaintiff that he would not be fired abruptly and without just cause." (Count Two, ¶ 51.) Count CT Page 2370 three alleges a claim for breach of implied contract and count four sets forth a negligent infliction of emotional distress claim. The defendant now moves for summary judgment on all four counts.
"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, 279,567 A.2d 829 (1989). "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49.
"A genuine issue has been variously described as a triable, substantial or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence." (Citation omitted; internal quotation marks omitted.) United Oil Co. v.Urban Redevelopment Commission, 158 Conn. 364, 378, 260 A.2d 596
(1969). "[T]he genuine issue aspect of summary judgment procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." (Internal quotation marks omitted.) United Oil Co. v.Urban Redevelopment Commission, supra, 158 Conn. 378-79. "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammer v. Lumberman's MutualCasualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990).
"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.)Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 554-55,707 A.2d 15 (1998).
 I. Count One: Retaliatory Discharge CT Page 2371
The defendant advances several arguments in support of the motion for summary judgment. As to count one, the defendant argues that the plaintiff was terminated because of a history of unexcused absences in violation of its attendance policy. The plaintiff argues that the defendant's proffered reason for his termination is pretextual and that he was discharged in retaliation for filing a workers' compensation claim.
For retaliatory discharge cases, the Connecticut Supreme Court has adopted the burden shifting analysis articulated in McDonnellDouglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817,36 L.Ed.2d 668 (1973). See Ford v. Blue Cross Blue Shield of Connecticut,Inc., 216 Conn. 40, 53, 578 A.2d 1054 (1990) (Connecticut looks to federal law for guidance in setting burdens of proof in § 31-290a actions). Accordingly, "[t]he plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, non-discriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Citations omitted; internal quotation marks omitted.) Ford v. Blue Cross BlueShield of Connecticut. Inc., supra, 53-54. "On summary judgment, [however], the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus." (Internal quotation marks omitted.) Gordon v. Yale-New Haven Hospital, Superior Court, judicial district of New Haven at New Haven, Docket No. 365472 (May 22, 1998, Levin, J.).
The defendant is entitled to summary judgment as to count one because it has rebutted any presumption of discrimination with CT Page 2372 overwhelming evidence of a legitimate nondiscriminatory reason for terminating the plaintiff's employment. See Gordon v.Yale-New Haven Hospital, supra, Superior Court, Docket No. 365472. The defendant has satisfied this burden by making a substantial showing that the plaintiff was discharged because of chronic absenteeism in violation of the defendant's attendance policy. Id.
The defendant's employee handbook sets forth the defendant's attendance policies.[3] (See Defendant's Exhibit A.) The handbook provides in relevant part that "[r]epeated tardiness or failure to report for your shift are grounds for dismissal." (See Defendant's Exhibit A, 1997 Employee Handbook § 1.) Accordingly, an employee must call the defendant should he be absent or late and speak with a supervisor. (See Defendant's Exhibit A, 1998 Employee Handbook c. 4 and 1997 Employee Handbook § 1.)
The policy provides that an employee is subject to a verbal or final written warning if the employee has been absent or tardy three times during a sixty day period. (See Defendant's Exhibit A, 1998 Employee Handbook c. 1 and 1997 Employee Handbook § 7.) Absences and instances of tardiness for which the employee has been excused by his supervisor or for which he has a medical excuse are not considered. (See Defendant's Exhibit A, 1998 Employee Handbook c. 6 and 1997 Employee Handbook § 7.) The employee is subject to automatic termination upon the next infraction that occurs during the sixty day period following receipt of a written warning.[4] (See id.)
The plaintiff's time cards and absentee record forms for 1997 and 1998 reveal the plaintiff's history of excessive absenteeism. (See Defendant's Exhibit B, 1997 Absentee Record Form; Defendant's Exhibit C, 1998 Absentee Record Form; Faselle Affidavit, ¶¶ 10 through 13; Time Card Attachments to Faselle Affidavit.) The plaintiff had three unexcused absences and an additional six absences in the three months preceding his injury on June 8, 1997. (See Defendant's Exhibits B, 1997 Absentee Record Form.) Following his return to work in November, 1997, the plaintiff had one unexcused absence in January, 1998, and another two on February 3 and 15, respectively. (See Defendant's Exhibit C, 1998 Absentee Record Form; Faselle Affidavit, ¶ 10; Time Card Attachments to Faselle Affidavit.) The plaintiff incurred an additional four unexcused absences between April and June, 1998.[5] (See Defendant's Exhibit C, 1998 Absentee Record Form; Faselle Affidavit, ¶ 10; Time Card Attachments to Faselle CT Page 2373 Affidavit.) The plaintiff also was absent for various reasons on at least twenty-three other days between December, 1997, and June, 1998.[6] (See Defendant's Exhibit C, 1998 Absentee Record Form; Faselle Affidavit, ¶¶ 11-12; Time Card Attachments to Faselle Affidavit.)
Moreover, the plaintiff received a final written warning on February 16, 1998, for having three unexcused absences within a sixty day period. (See Defendant's Exhibit D, Final Written Warning.) Before issuing the final written warning, the plaintiff's supervisor spoke with the plaintiff in Spanish about his excessive absenteeism on several occasions. (See Defendant's Exhibit E, Nieves Affidavit, ¶¶ 16-18; Defendant's Exhibit 17, Pagan Deposition, p. 99; Plaintiff's Exhibit A, Pagan Deposition, pp. 43; see also Defendant's Exhibit C, 1998 Absentee Record Form (plaintiff's signature and dates).) Taking the evidence as a whole, this court concludes that the plaintiff was discharged for excessive absenteeism in violation of the defendant's attendance policy. Therefore, "the presumption raised by the prima facie case is rebutted. . . ." Ford v. Blue Cross Blue Shield ofConnecticut. Inc., supra, 216 Conn. 54.
The factual inquiry now proceeds to a new level of specificity in which the plaintiff must "satisfy [his] burden of persuading the factfinder that [he] was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Internal quotation marks omitted.) Ford v. Blue Cross Blue Shield of Connecticut. Inc., supra, 216 Conn. 54. "[A] causal connection may be established either indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant." (Emphasis in original; internal quotation marks omitted.) Gordon v. Yale-NewHaven Hospital, supra, Superior Court, Docket No. 365472. The plaintiff fails to provide such evidence and, therefore, does not met this burden.
The plaintiff offers his own affidavit in rebuttal to the defendant's overwhelming offer of proof. Although the plaintiff disagrees with the number of times the defendant claims that he was absent; (See Pagan Affidavit, ¶¶ 6, 19); he fails to offer CT Page 2374 any evidence specifically addressing the defendant's offer of proof regarding absenteeism. Rather, he provides various explanations for his absences without any substantiating documentation. (See Pagan Affidavit, ¶¶ 5, 7, 12, 14-15.) See also Gordon v. Yale-New Haven Hospital, supra, Superior Court, Docket No. 365472 ("mere denials, speculation and unsubstantiated allegations, however, will not suffice to show pretext").
The plaintiff further attests that "[o]ther employees were also tardy or absent. . . yet none of these employees were terminated." (Pagan Affidavit, ¶ 13.) Without substantiating documentation, these "conclusory allegations and assertions will not suffice to defeat a motion for summary judgment in this area of the law." (Internal quotation marks omitted.) Gordon v.Yale-New Haven Hospital, supra, Superior Court, Docket No. 365472. The same may be said for the plaintiff's allegation that his supervisor falsified his time cards. (See Pagan Affidavit, ¶ 7; but see Defendant's Exhibit 15, Pagan Deposition, pp. 66-67 (plaintiff acknowledging that he punched in and out with a time card each workday and that he was unaware of any problems with his time cards).) In toto, the plaintiff's affidavit fails directly to show "that a discriminatory reason more likely motivated the defendant or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Internal quotation marks omitted.) Ford v. Blue Cross BlueShield of Connecticut. Inc., supra, 216 Conn. 54.
Moreover, the plaintiff's own depositional testimony supports the defendant's claim that he was discharged for excessive absences in violation of the defendant's attendance policy. The plaintiff acknowledged that his supervisor spoke with him in either November or December, 1997, about his absences. (See Plaintiff's Exhibit A, Pagan Deposition, pp. 37; Defendant's Exhibit 18, Pagan Deposition, pp. 42-43.) The plaintiff's supervisor spoke with him about his repeated absences at least five times during 1998. (See Defendant's Exhibit 17, Pagan Deposition, p. 99.) The plaintiff testified that he also signed the 1998 absentee record form on five separate occasions because he failed to appear at work or was late. (See id.) The plaintiff admitted that he failed to call in two or three times. (See Defendant's Exhibit 2, Pagan Deposition, p. 101.) He further testified that at the time he signed the paper, he had not called. (See id.)
For all of the above reasons, this court concludes that the CT Page 2375 evidence as a whole "does not make out a jury question as to pretext and discriminatory animus." Gordon v. Yale-New HavenHospital, supra, Superior Court, Docket No. 365472. Therefore, the defendant is entitled to summary judgment as to count one.
 II. Counts Two Three: Breach of Express or Implied Contract
As to counts two and three, the defendant argues that the plaintiff's employment was at will and that there was no express or implied contract for employment between the parties. The defendant argues in the alternative that assuming its progressive discipline policy constituted an implied contract that the plaintiff would not be discharged without just cause, it followed the policy in discharging the plaintiff. The plaintiff argues that the progressive discipline policy, coupled with the defendant's customs and practices, constituted an expressed or implied contract for employment and that the defendant breached such contract when it failed to follow the policy prior to discharging the plaintiff.
The plaintiff's contract claims rest on the allegation that the defendant terminated the plaintiff's employment in violation of the progressive discipline policy stated in the employee handbook. (See generally Revised Complaint, Counts Two and Three.) Assuming, without deciding, that the progressive discipline policy created a contract for employment, the defendant's offer of proof amply establishes that the plaintiff was discharged in accordance therewith. The evidence, as discussed in the previous section, clearly refutes the plaintiff's unsupported assertion that "Floyd Manufacturing didn't give me notice for any warnings that I was supposedly absent a lot." (Pagan Affidavit, ¶ 19.) See Maffucci v. RoyalPark Ltd. Partnership, supra, 243 Conn. 554-55 ("mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court"). Therefore, no material issues of genuine fact exist as to whether the defendant followed the progressive discipline policy in terminating the plaintiff. The defendant is entitled to summary judgment as to counts two and three.
 III. Count Four: Negligent Infliction of Emotional Distress
As to count four, the defendant argues that summary judgment should be granted in its favor because its conduct during the CT Page 2376 termination process was not unreasonable. The plaintiff argues that the defendant's conduct during the plaintiff's employment and the termination process was unreasonable. The plaintiff specifically attributes as unreasonable his supervisor's conduct in throwing down a paper "in a bad way" in front of him and his coworkers when the plaintiff made an error; his supervisor's failure to respond to his pleas for assistance; and the defendant's failure to provide light duty when it was available. (See generally Count Four; see also Pagan Affidavit, ¶¶ 9, 17, 19; Plaintiff's Exhibit A, Pagan Deposition, p. 44.) In his revised complaint, the plaintiff also alleges that he suffered emotional distress because of his supervisor's false accusation that he had unexcused absences. (Count Four, ¶ 27.)
"The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Internal quotation marks omitted.) Parsons v. UnitedTechnologies Corp. , 243 Conn. 66, 89, 700 A.2d 655 (1997). The evidence in this case shows the following: In the early afternoon of July 9, 1997, the plaintiff appeared at the defendant's plant to obtain his paycheck. (See Defendant's Exhibit 5, Pagan Deposition, p. 97.) Upon entering the building the plaintiff had a brief conversation with Tony Faselle, the plant manager, in which Faselle said that "the time of work got to an end." (Id.) The plaintiff responded, "[O]kay, thank you." (Id.) The plaintiff did not speak with anyone else and he left the building. (See id.) The court concludes, as a matter of law, that the defendant's behavior during the termination process was not unreasonable. Therefore, the plaintiff cannot sustain a claim for negligent infliction of emotional distress during the termination process.
The court further concludes, as a matter of law, that the alleged conduct of the defendant and its employees during the plaintiff's employment was not unreasonable. Rosenberg v. MeridenHousing Authority, Superior Court, judicial district of New Haven at New Haven, Docket No. 377376 (October 29, 1999, Licari, J) (discussing behavior for which a party may be held liable). The mere act of throwing down a piece of paper on an unspecified date in response to errors committed by the plaintiff "does not transgress the bounds of socially tolerable behavior."[7]Parsons v. United Technologies Corp. , supra, 243 Conn. 89.
The evidence in this case also belies the plaintiff's claims that he requested and received permission from the defendant for CT Page 2377 any absences and that he had not received any warnings from the defendant regarding absences. (See Pagan Affidavit, ¶ 19; but see Defendant's Exhibit C, Absentee Record Form 1998; Defendant's Exhibit D, Final Written Warning; Defendant's Exhibit E, Nieves Affidavit, ¶¶ 16-17; Defendant's Exhibit 2, Pagan Deposition, p. 101; Defendant's Exhibit 18, Pagan Deposition, pp. 42-43.) At his deposition, the plaintiff acknowledged that his supervisor spoke to him about his excessive absenteeism at least twice after he had returned to work in November or December, 1997. (See Defendant's Exhibit 18, Pagan Deposition, pp 42-43.) He also admitted that there were times when he was absent without calling the defendant. (See Defendant's Exhibit 18, Pagan Deposition, p. 42.)
The evidence further belies the plaintiff's allegations that the defendant failed to provide light duty and that his supervisor ignored his pleas for help. The uncontradicted evidence shows the following: On November 7, 1997, the plaintiff's doctor authorized the plaintiff to return to work on half-day light duty for two weeks. (See Defendant's Exhibit J, Return to Work Release, 11/10/97.) Thereafter, the plaintiff was allowed to resume regular duty. (See id.) The plaintiff returned to work on November 23, 1997, for six hours. (See Defendant's Exhibit K, Return to Work Release, 11/25/97.) On November 25, 1997, the plaintiff's doctor again authorized the plaintiff's return to work. This time the return to work release provided that the plaintiff remain on light duty and then advance to full duty within one week. (See Defendant's Exhibit K, Return to Work Release, 11/25/97; Defendant's Exhibit 6, Pagan Deposition, p. 31.) Upon returning to work on or about November 26, 1997, the plaintiff was allowed to work half-days for two weeks rather than one. (See Defendant's Exhibit 6, Pagan Deposition, pp. 32; see also Defendant's Exhibit E, Nieves Affidavit, ¶ 10.)
The evidence further shows that during the first two weeks after his return, the plaintiff did not lift anything too heavy. (See Defendant's Exhibit 6, Pagan Deposition, p. 32; see also id., pp. 22-23 (plaintiff stating that he did not violate the no heavy lifting restrictions).) The plaintiff's supervisor instructed him to seek out others to assist him and that he should "take it easy." (Defendant's Exhibit 7, Pagan Deposition, p. 21, 23; see also Defendant's Exhibit E, Nieves Affidavit, ¶ 10.) Furthermore, the plaintiff often asked for help in lifting buckets and others would help him. (See Defendant's Exhibit 8, Pagan Deposition, p. 33.) The evidence also shows that at no time CT Page 2378 did the plaintiff's supervisor say he would not help the plaintiff. (See Defendant's Exhibit 8, Pagan Deposition, p. 35.)
The plaintiff nevertheless offers his post-injury use of the "W" machine, a foot pedal machine, as evidence of the defendant's unreasonableness in failing to provide light duty. (See Pagan Affidavit, ¶ 17.) Although the plaintiff testified that he was required to work on the "W" machine; (Plaintiff's Exhibit, Pagan Deposition, pp. 20, 32; but see Plaintiff's Exhibit E, Nieves Affidavit, ¶¶ 5-8); he further testified that he did not ask his supervisor if he could use another type of machine. (See Defendant's Exhibit 10, Pagan Deposition, p. 25.) Clearly, the defendant attempted in good faith to accommodate the plaintiff's needs. Although those efforts may have fallen short of the plaintiff's expectations, they do not provide a basis for an emotional distress claim.
Lastly, the evidence does not support the plaintiff's repeated allegation that his supervisor was aware that he could not understand or read English and yet required him to sign papers without informing him of their contents. (See Pagan Affidavit, ¶¶ 8, 10; Plaintiff's Exhibit A, Pagan Deposition, p. 98.) The uncontradicted evidence shows that the plaintiff's supervisor always addressed the plaintiff in Spanish. (See Plaintiff's Exhibit E, Nieves Affidavit, ¶ 18.) The plaintiff testified that his supervisor spoke to him about his absences in either November or December, 1997. (See Plaintiff's Exhibit A, Pagan Deposition, pp. 37, 42-43.) The plaintiff understood from the discussion with his supervisor that he could be fired if he failed to call in another time. (See id., p. 43) The plaintiff also knew that failing to call in was grounds for termination because it was written in the employee handbook. (See id.) The plaintiff testified that his supervisor discussed his absences with him on at least five occasions. (Defendant's Exhibit 17, Pagan Deposition, p. 99.) The plaintiff acknowledged signing the 1998 absentee record form on five separate occasions because he was late or absent. (See id.; see also Defendant's Exhibit 3, 1998 Absentee Record Form (plaintiff's signatures).) The plaintiff also testified that a friend read portions of the employee handbook to him and that he was aware of the sections relating to absenteeism. (See Plaintiff's Exhibit A, Pagan Deposition, p. 98.) Taking this evidence as a whole, there is no genuine issue of material fact as to whether the plaintiff understood the defendant's attendance policy and the verbal and written warning which he received. CT Page 2379
The court concludes, therefore, that the defendant's actions during the plaintiff's employment were not so unreasonable, as a matter of law, to hold the defendant liable for any resulting emotional distress of the plaintiff. The defendant is entitled to summary judgment as to count four.
 CONCLUSION
For the foregoing reasons, there are no genuine issues of material fact in dispute and the defendant is entitled to summary judgment as a matter of law. The motion for summary judgment is granted as to the entire revised complaint.
Hennessey, J.